ARNOLD TOURS, INC., et al., Plaintiffs, Appellants,

v.

William B. CAMP et al., Defendants, Appellees.

The WINGATE CORPORATION, Plaintiff, Appellant,

v.

INDUSTRIAL NATIONAL BANK et al., Defendants, Appellees.

Nos. 7192, 7186.

United States Court of Appeals First Circuit.

March 27, 1969.

No. 7192:

Richard J. Murphy, Tewksbury, Mass., with whom Timothy J. Murphy, Boston, Mass., was on brief, for appellants.

Alan S. Rosenthal, Attorney, Department of Justice, with whom Edwin L. Weisl, Jr., Asst. Atty. Gen., Paul F. Markham, U. S. Atty., and Leonard Schaitman, Attorney, Department of Justice, were on brief, for William B. Camp, Comptroller of the Currency, appellee.

Elliott V. Grabill, Boston, Mass., with whom Arthur H. Bloomberg and Grabill, Ley & Butterworth, Boston, Mass, were on brief, for South Shore National Bank, appellee.

No. 7186:

Edward J. Regan, Providence, R. I., with whom Eustace T. Pliakas and Graham, Reid, Ewing & Stapleton, Providence, R. I., were on brief, for appellant.

Matthew W. Goring, Providence, R. I., with whom Edward M. Watson, Providence, R. I., Robert W. Meserve, John B. Newhall, Gordon L. Doerfer, Boston, Mass., Hinckley, Allen, Salisbury & Parsons, Providence, R. I., and Nutter, McClennen & Fish, Boston, Mass., were on brief, for Industrial National Bank of Rhode Island, appellee.

Alan S. Rosenthal, Attorney, Department of Justice, with whom Edwin L. Weisl, Jr., Asst. Atty. Gen., Edward P. Gallogly, U. S. Atty., and Stephen R. Felson, Attorney, Department of Justice, were on brief, for William B. Camp, Comptroller of the Currency, appellee.

Robert J. McOsker, City Solicitor, and Vincent J. Piccirilli, Asst. City Solicitor, on brief for City of Providence, appellee.

Matthew Hale, Washington, D. C., on brief for The American Bankers Association, amicus curiae.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and COFFIN, Circuit Judge.

ALDRICH, Chief Judge.

These are two actions by parties engaged in certain business pursuits to restrain competition from national banks which, supported by rulings of the Comptroller of the Currency, have entered their fields. Plaintiffs seek, basically, to attack these rulings. In both cases the district courts held that they were without standing to do so, and dismissed the complaints on motions of the defendants. Plaintiffs appeal.

## THE TRAVEL AGENCY BUSINESS

We consider first the action brought by Arnold Tours, Inc. and some forty other independent travel agencies in Massachusetts, allegedly on behalf of others similarly situated as well as themselves, against the Comptroller and the South Shore National Bank. The bank, in reliance upon a ruling by defendant Comptroller's predecessor,[1] is engaging not merely in the financial aspects of travel, but "full" travel service, or a complete travel agency business. To quote from what is said to be the bank's own announcement, its employees are prepared to arrange for bicycles in Bermuda, villas on the Riviera, and houseboats in Kashmir. The Comptroller argues at length that this is traditional and legitimate bank activity. We do not, however, consider this matter except to say that plaintiffs present enough of an issue so that the question of standing is properly before us. We also note that no question of reviewability of the Comptroller's rulings has been raised. *See generally,* Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv.L.Rev. 367, 383 & n.

60 (1968). Our sole question is the correctness of defendants' contention, which we will paraphrase as saying that what the bank chooses to do is, both literally and figuratively, none of plaintiffs' business.

It has long been settled that an ordinary competitor has no standing to complain of a party's lack of legal authority to engage in his business, in a suit against the competitor, the government, or both. Railroad Co. v. Ellerman, 1881, 105 U.S. 166, 26 L.Ed. 1015; Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374; Tennessee Power Co. v. TVA, 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543. Despite numerous exceptions, this principle has withstood erosion not only because of the traditional rationale behind standing doctrines generally, *see* Flast v. Cohen, 1968, 392 U.S. 83, 91–101, 88 S.Ct. 1942, 20 L.Ed.2d 947, but because of the policy encouraging free and open competition— a policy that favors competition in the market place, not in the courts. The exceptions, where standing is recognized, are as well established as the principle itself. The first is for complaints of "illegal" competition, by which is usually meant competition that is unlawful as to plaintiff apart from considerations of corporate power of authority. *See* Alabama Power Co. v. Ickes, *supra* at 479, 58 S.Ct. 300; Central Louisiana Elec. Co. v. REA, W.D.La., 1964, 236 F.Supp. 271, 277, rev'd, 5 Cir., 354 F.2d 859, cert. denied 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed. 2d 54; *but cf.* Kansas City Power & Light Co. v. McKay, 1955, 96 U.S.App. D.C. 273, 225 F.2d 924, *cert. denied* 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780. Plaintiffs do not suggest that the Comptroller has sanctioned, or that the bank has undertaken, any unfair, conspiratorial, or criminal methods of competi-

---

* Sitting by designation.

1. " ¶7475. National banks acting as travel agents.
    Incident to those powers vested in them under 12 U.S.C. § 24, national banks may provide travel services for their customers and receive compensation therefor.

Such services may include the sale of trip insurance and the rental of automobiles as agent for a local rental service. In connection, therewith, national banks may advertise, develop, and extend such travel services for the purpose of attracting customers to the bank. See ¶7376."

tion, or that there has been any violation of the antitrust laws. The second exception is where it is claimed that some "legal right" has been injured, by which is meant, in its nonconclusory sense, that plaintiff has an independent property right, or a right to be free from the particular kind of competition he is challenging. Such a right is attached to or arises out of an exclusive franchise, on the one hand, or a restricted license or the like, on the other. Frost v. Corporation Commission, 1929, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; *cf.* Whitney National Bank in Jefferson Parish v. Bank of New Orleans, 1963, 116 U.S.App. D.C. 285, 323 F.2d 290, 299–300, rev'd on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386. Plaintiffs fit in no such category.

The final general exception is where the plaintiff can show the existence of a "statutory aid to standing" for a class of persons which includes himself. This statutory aid may take the form of a "judicial review" provision of the particular administrator in question for "parties aggrieved," "adversely affected," or the like. In such a case, FCC v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869, 1037, would presumably provide standing for legitimate competitors. *See generally,* Jaffe, Judicial Control of Administrative Actions, 513–531. There is, however, no such provision as to the Comptroller of the Currency. An alternative statutory aid may be found if there is an indication of Congressional intent, explicit or implicit, in the relevant substantive acts to grant protection to the competitive interests of a class of businesses which includes the plaintiff. Thus in Hardin v. Kentucky Utilities Co., 1968, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787, the Supreme Court found that a competing private utility company had standing to challenge the expansion of TVA into new areas in alleged violation of the area limitations of section 15d(a) of the Tennessee Valley Authority Act, 16 U.S.C. § 831n–4(a). The Court said, "[O]ne of the primary purposes of the area limitations in § 15d of the Act was to protect private utilities from TVA competition. * * * Since respondent is thus in the class which § 15d is designed to protect, it has standing * * *." 390 U.S. at 6–7, 88 S.Ct. at 655.

The only possible statutory aid to the standing of travel agents in national banking legislation exists in 12 U.S.C. § 24(7). This section states that national banks may "exercise * * * all such incidental powers as shall be necessary to carry on the business of banking," and then lists numerous powers explicitly granted. It has long been settled in suits over private contracts that the enumeration of such powers is an effective and strong prohibition of all activities not enumerated and not incidental to banking. *See* First National Bank of Charlotte v. National Exchange Bank, 1875, 92 U.S. 122, 128, 23 L.Ed. 679; National Bank v. Matthews, 1878, 98 U.S. 621, 625, 25 L. Ed. 188; Logan County National Bank v. Townsend, 1891, 139 U.S. 67, 73, 11 S.Ct. 496, 35 L.Ed. 107. But even assuming that national banks are prohibited by section 24(7) from entering into the business of procuring travel arrangements, this is not sufficient to provide a statutory aid to standing. The prohibition must be demonstrably intended to protect the competitive interests of other members of the prohibited business. *See* the concurring opinion of Judge Thornberry in Saxon v. Georgia Ass'n. of Independent Ins. Agents, 1968, 5 Cir., 399 F.2d 1010, 1019; Association of Data Processing Serv. Organizations v. Camp, D.Minn., 1968, 279 F.Supp. 675, aff'd, 8 Cir. 1969, 406 F.2d 837. We, too, (see 8th Cir. opinion in *Camp*, n. 10), cannot accept the simplistic suggestion by the majority in *Georgia Ass'n*, 399 F.2d at 1016, that as soon as it appears that the competitive activities were unlawfully carried out the plaintiffs have standing.

The plaintiffs have not pointed to, nor have we in our research discovered, any evidence that Congress in delimiting the scope of banking activity in the ultra

vires section, quoted *supra,* was concerned, in 1863 and 1864 when the national banks were formed,[2] with competitors in the businesses impliedly prohibited, much less in any particularity with travel agents (if they then existed). Rather, the limitations were for the purpose of insuring the stability, liquidity, and safety of the banks. *See National Bank v. Matthews, supra,* at 626; Davis, Banking Regulation Today: A Banker's View, 31 Law & Contemp. Problems 639 (1966). *See also* Million, The Debate of the National Bank Act of 1863, 2 J. of Pol.Econ. 251 (1894). No doubt Congress has continuously, from 1864 to the present, been "very careful" (see *infra*) in restricting the activities of banks; and no doubt Congress has been, as we shall see in the second portion of this opinion, specifically concerned with certain potential competitors of the banks. But as Senator Proxmire pointed out while offering an amendment to banking legislation[3] specifically designed to protect particular competitors, the thrust of the close regulation of banks is for purposes of stability: "We are very careful in the regulations of banks. This has principally been done to assure the solvency of the banks by limiting the activities of banks to safe and relatively liquid investments." 108 Cong.Rec. 22031 (1962). *See also* S.Rep. No. 2105, 87th Cong., 2d Sess. (1962) (Supplemental views of Senators Proxmire, Douglas, and Neuberger) in 2 U.S. Code Cong. & Admin. News, 1962, at p. 3887. While at some point Congressional concern with a suf-

ficient quantity of specific competitors of banks might indicate a Congressional intent that section 24(7) should now be read as a measure not only to protect investors but also to protect all potential members of prohibited activities, such a point has not been reached. More proof of Congressional solicitude is required before this court or any court should convert an economic struggle into a legal one.

The plaintiffs have suggested, however, that the general rule denying competitors standing is no longer valid, or has undergone substantial change. First, they argue that section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 provides standing for any persons claiming to be "adversely affected in fact." This contention seems derived from the interpretation of section 10(a) urged by Professor Davis in his Administrative Law Treatise, § 22.02, and presumably adopted in American President Lines v. FMB, D.D.C., 1953, 112 F.Supp. 346.[4] We, however, choose to side with Professor Jaffe[5] and the majority of the courts[6] in holding that the passage of the APA was not intended to alter to such a drastic extent previous law on the question of standing. Moreover, we should add that we have serious reservations whether a test of "adversely affected in fact" would provide a simpler means of deciding the issue of standing. We do not pause for such analysis in the present case, but if, as has been suggested, simplicity and ease of determination is a reason for preferring the new interpretation, we do not find it.[7]

2. National Bank Act of 1863, ch. 58, 12 Stat. 665; National Bank Act of 1864, ch. 106, 13 Stat. 99.

3. This legislation will form the basis of our holding in the second half of this opinion.

4. *See also* Baker, Watts & Co. v. Saxon, D.D.C., 1966, 261 F.Supp. 247.

5. Jaffe, Judicial Control of Administrative Action 528–30. *See also* Note, Competitors' Standing To Challenge Administrative Action Under the APA, 104 U.Pa.L. Rev. 843 (1956).

6. *See* Saxon v. Georgia Ass'n of Independent Ins. Agents, *supra,* at 1019 n. 1; Ru-

ral Electrification Administration v. Northern States Power Co., 8 Cir., 1967, 373 F.2d 686, 692–693 & nn. 9–10, cert. denied 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332; Kansas City Power & Light Co. v. McKay, *supra.*

7. Indeed, one of the bases for the rule against competitors' suits might well be the difficulty of determining whether mere increased competition is an injury in fact, particularly where a new and largely undeveloped market is involved. Cf. World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1966, 358 F.2d 691.

The plaintiffs alternatively urge that Flast v. Cohen, *supra,* indicates a major shift in the judicial attitude toward the general doctrine of standing; and that while it is not directly in point, this decision indicates that the relevant test for determining standing in this situation is whether the parties are sufficiently adverse to bring into focus the issues raised. *See also* the concurrence of Judge Thornberry in Saxon v. Georgia Ass'n of Independent Ins. Agents, *supra.* Our first response to plaintiffs' contention is that Flast v. Cohen was not intended to have any major reshaping effect outside the area of standing determinations under Article III for taxpayer suits challenging the constitutionality of a federal taxing and spending statute. Such an approach to standing as used in *Flast*—one focusing solely upon an assessment of the degree of adversity and clarity of the particular case—if applied to questions of administrative law standing would disturb the entire judicial relationship to the administrative as presently understood by Congress. Congress now knows that if it wishes a particular class of plaintiffs to have, or not to have, standing to seek review of agency rulings, it may make, or not make, the types of legislative provisions discussed earlier in this opinion, and that is an end to the matter. Under plaintiffs' proffered approach, the courts would have the last word on standing, based upon their view of the justiciability of the particular circumstances pleaded. When the conflict is one of constitutional dimensions, such an approach may be necessary. In purely administrative matters we think otherwise.

Our second answer is that even if we were to assume that Flast v. Cohen was intended to affect other areas, we do not read that case to require all administrative standing determinations to be made solely upon an assessment of the degree of. adversity and clarity. Rather, *Flast* was concerned with reevaluating the standards for determining adversity and clarity in a situation where the relevant standing doctrine was adjudged to rest entirely upon such considerations. *Flast* is inapplicable when the standing doctrine in question rests upon a basis largely independent of the concerns for adversity and clarity—namely the limited role of the judiciary in regulating legitimate competition.

■ In sum, we find no acceptable basis for standing for the travel agents.

## DATA PROCESSING

Turning to the second action involving the Comptroller, here plaintiff, Wingate Corporation, which performs certain data processing services for hire, brings suit to enjoin the defendant, Industrial National Bank of Rhode Island from performing data processing services. for the City of Providence, as sanctioned by a general ruling of the Comptroller. While Wingate, like Arnold, complains that the bank is violating section 24(7) of 12 U.S.C. by providing such services to ' bank customers, its claim to standing is aided by the presence of specific Congressional legislation dealing with banks and computer servicing. In 1962 Congress, after some debate, enacted the Bank Service Corporation Act, 76 Stat. 1132, which allowed small banks to combine to form a separate corporation which could own data processing equipment. The primary purpose of this legislation was to allow small banks to compete more effectively with the larger banks, which had sufficient capital and business to buy their own electric data processing equipment. However, in order to prevent such corporations being used as a subterfuge for entering into the nonbanking business of data processing, and to protect the interests of certified public accounting firms, Congress provided in section 4 of that Act, 12 U.S.C. § 1864, "No bank service corporation may engage in any activity other than the performance of bank services for banks." The legislative history is clear. The prohibition originated in an amendment proposed by the National Society of Public Accountants, which objected to the original version of the bill that would have allow-

ᴸed bank service corporations to solicit outside business to some extent. The Accountants feared injury to their growing business of bookkeeping with the aid of computers. The final provision was an obvious response. *See* 108 Cong.Rec. 16499, 22031 (1962); Hearings on Misc. Bank Bills Before the Comm. on Banking & Currency of the United States Senate, 87th Cong., 2d Sess., at 79–80 (1962).

▪ We conclude that the present plaintiff is within the class of persons intended to be protected by section 4 of the 1962 legislation, and the only question is whether standing exists to complain not of competition from bank service corporations, but from national banks directly. We conclude in the affirmative. When Congress so explicitly provides protection for a particular business against competition from a regulated national entity—even though indirectly by regulating a subsidiary—standing exists at least to entertain complaints by that business concerning its competitive relationship to the national entity. Section 4 had a broader purpose than regulating only the service corporations. It was also a response to the fears expressed by a few senators, that without such a prohibition, the bill would have enabled "banks to engage in a nonbanking activity," S.Rep. No. 2105, *supra* (Supplemental views of Senators Proxmire, Douglas, and Neuberger), and thus constitute "a serious exception to the accepted public policy which strictly limits banks to banking." (Supplemental views of Senators Muskie and Clark). We think Congress has provided the sufficient statutory aid to standing even though the competition may not be the precise kind Congress legislated against.[8]

Indeed, there is a plausible argument that the Bank Service Corporation Act, read in conjunction with 12 U.S.C. § 24 (7), does in fact impliedly prohibit national banks from directly entering into the data processing service business. If the section four prohibition could be avoided by a small national bank, member of a group owning a service corporation, soliciting its own data processing customers to be serviced by the subsidiary via the bank, the prohibition would be largely illusory. And if a small bank could not directly solicit such customers, it would follow that the large banks, owning their own equipment, could not, or the equalizing effect of the Bank Service Corporation Act would be lost. To be considered in opposition to such an argument is the Comptroller's ruling interpreting the section,[9] and the phenomenon of the one-bank holding company, that is not covered by the Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841–49, which requires only multibank holding companies to divest themselves of all nonbanking interests. We leave the resolution of this conflict to future determination. For the purposes of the issue of standing, we need decide only that the passage of the Bank Service Corporation Act arguably prohibits direct entry by national banks into the data processing service business.

In case No. 7192 the judgment of the District Court is affirmed.

In case No. 7186 the judgment of the District Court is vacated and the case remanded for further proceedings not inconsistent herewith.

---

8. *But cf.* Association of Data Processing Serv. Organizations v. Camp, 8 Cir., 1969, 406 F.2d 837, n. 12, which stated that the reliance of similar plaintiffs upon the Act for standing was "misplaced."

9. Comptroller's Ruling ¶7399 provides in part that:

"* * * such corporations may only perform bank services for banks. Bank services, however, as defined in the Act, would include any service which a bank would ordinarily perform for a customer. Accordingly, if a bank undertakes to handle the payroll accounts or the accounts receivable of a customer, a bank service corporation may perform for the bank the service necessary to enable the bank to fulfill its undertaking."