ASSOCIATION OF DATA PROCESSING SERVICE
ORGANIZATIONS, INC., ET AL. *v.* CAMP, COMP-
TROLLER OF THE CURRENCY, ET AL.

No. 85.  Argued November 18, 1969—
Decided March 3, 1970

*Bert M. Gross* argued the cause for petitioners.  With
him on the brief were *Milton R. Wessel* and *Felix M.
Phillips.*

*Alan S. Rosenthal* argued the cause for respondents.
With him on the brief for respondent Camp were *Solici-*

tor General Griswold, Assistant Attorney General *Ruckelshaus,* and *Peter L. Strauss.* Fallon Kelly filed a brief for respondent American National Bank & Trust Co.

*Matthew P. Mitchell* and *Leland R. Selna, Jr.,* filed a brief for the Sierra Club as *amicus curiae* urging reversal.

*Matthew Hale* filed a brief for the American Bankers Association as *amicus curiae* urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioners sell data processing services to businesses generally. In this suit they seek to challenge a ruling by respondent Comptroller of the Currency that, as an incident to their banking services, national banks, including respondent American National Bank & Trust Company, may make data processing services available to other banks and to bank customers. The District Court dismissed the complaint for lack of standing of petitioners to bring the suit. 279 F. Supp. 675. The Court of Appeals affirmed. 406 F. 2d 837. The case is here on a petition for writ of certiorari which we granted. 395 U. S. 976.

Generalizations about standing to sue are largely worthless as such. One generalization is, however, necessary and that is that the question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to "cases" and "controversies." As we recently stated in *Flast* v. *Cohen,* 392 U. S. 83, 101, "[I]n terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be

adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast* was a *taxpayer's* suit. The present is a *competitor's* suit. And while the two have the same Article III starting point, they do not necessarily track one another.

The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise. There can be no doubt but that petitioners have satisfied this test. The petitioners not only allege that competition by national banks in the business of providing data processing services might entail some future loss of profits for the petitioners, they also allege that respondent American National Bank & Trust Company was performing or preparing to perform such services for two customers for whom petitioner Data Systems, Inc., had previously agreed or negotiated to perform such services. The petitioners' suit was brought not only against the American National Bank & Trust Company, but also against the Comptroller of the Currency. The Comptroller was alleged to have caused petitioners injury in fact by his 1966 ruling which stated:

> "Incidental to its banking services, a national bank may make available its data processing equipment or perform data processing services on such equipment for other banks and bank customers." Comptroller's Manual for National Banks ¶ 3500 (October 15, 1966).

The Court of Appeals viewed the matter differently, stating:

> "[A] plaintiff may challenge alleged illegal competition when as complainant it pursues (1) a legal interest by reason of public charter or contract, . . .

(2) a legal interest by reason of statutory protection, . . . or (3) a 'public interest' in which Congress has recognized the need for review of administrative action and plaintiff is significantly involved to have standing to represent the public . . . ." 406 F. 2d, at 842–843.[1]

Those tests were based on prior decisions of this Court, such as *Tennessee Power Co.* v. *TVA,* 306 U. S. 118, where private power companies sought to enjoin TVA from operating, claiming that the statutory plan under which it was created was unconstitutional. The Court denied the competitors' standing, holding that they did not have that status "unless the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." *Id.,* at 137–138.

The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus the Administrative Procedure Act grants standing to a person "aggrieved by agency action within the meaning of a relevant statute." 5 U. S. C. § 702

---

[1] The first two tests applied by the Court of Appeals required a showing of a "legal interest." But the existence or non-existence of a "legal interest" is a matter quite distinct from the problem of standing. *Barlow* v. *Collins, post,* p. 159. The third test mentioned by the Court of Appeals, which rests on an explicit provision in a regulatory statute conferring standing and is commonly referred to in terms of allowing suits by "private attorneys general," is inapplicable to the present case. See *FCC* v. *Sanders Bros. Radio Station,* 309 U. S. 470; *Associated Industries* v. *Ickes,* 134 F. 2d 694, vacated on suggestion of mootness, 320 U. S. 707.

(1964 ed., Supp. IV). That interest, at times, may reflect "aesthetic, conservational, and recreational" as well as economic values. *Scenic Hudson Preservation Conf.* v. *FPC,* 354 F. 2d 608, 616; *Office of Communication of United Church of Christ* v. *FCC,* 123 U. S. App. D. C. 328, 334–340, 359 F. 2d 994, 1000–1006. A person or a family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. *Abington School District* v. *Schempp,* 374 U. S. 203. We mention these noneconomic values to emphasize that standing may stem from them as well as from the economic injury on which petitioners rely here. Certainly he who is "likely to be financially" injured, *FCC* v. *Sanders Bros. Radio Station,* 309 U. S. 470, 477, may be a reliable private attorney general to litigate the issues of the public interest in the present case.

Apart from Article III jurisdictional questions, problems of standing, as resolved by this Court for its own governance, have involved a "rule of self-restraint." *Barrows* v. *Jackson,* 346 U. S. 249, 255. Congress can, of course, resolve the question one way or another, save as the requirements of Article III dictate otherwise. *Muskrat* v. *United States,* 219 U. S. 346.

Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved "persons" is symptomatic of that trend. In a closely analogous case we held that an existing entrepreneur had standing to challenge the legality of the entrance of a newcomer into the business, because the established business was allegedly protected by a valid city ordinance that protected it from unlawful competition. *Chicago* v. *Atchison, T. & S. F. R. Co.,*

357 U. S. 77, 83–84. In that tradition was *Hardin* v. *Kentucky Utilities Co.*, 390 U. S. 1, which involved a section of the TVA Act designed primarily to protect, through area limitations, private utilities against TVA competition. We held that no explicit statutory provision was necessary to confer standing, since the private utility bringing suit was within the class of persons that the statutory provision was designed to protect.

It is argued that the *Chicago* case and the *Hardin* case are relevant here because of § 4 of the Bank Service Corporation Act of 1962, 76 Stat. 1132, 12 U. S. C. § 1864, which provides:

> "No bank service corporation may engage in any activity other than the performance of bank services for banks."

The Court of Appeals for the First Circuit held in *Arnold Tours, Inc.* v. *Camp,* 408 F. 2d 1147, 1153, that by reason of § 4 a data processing company has standing to contest the legality of a national bank performing data processing services for other banks and bank customers:

> "Section 4 had a broader purpose than regulating only the service corporations. It was also a response to the fears expressed by a few senators, that without such a prohibition, the bill would have enabled 'banks to engage in a nonbanking activity,' S. Rep. No. 2105, [87th Cong., 2d Sess., 7–12] (Supplemental views of Senators Proxmire, Douglas, and Neuberger), and thus constitute 'a serious exception to the accepted public policy which strictly limits banks to banking.' (Supplemental views of Senators Muskie and Clark). We think Congress has provided the sufficient statutory aid to standing even though the competition may not be the precise kind Congress legislated against."

We do not put the issue in those words, for they implicate the merits. We do think, however, that § 4 arguably brings a competitor within the zone of interests protected by it.

That leaves the remaining question, whether judicial review of the Comptroller's action has been precluded. We do not think it has been. There is great contrariety among administrative agencies created by Congress as respects "the extent to which, and the procedures by which, different measures of control afford judicial review of administrative action." *Stark* v. *Wickard,* 321 U. S. 288, 312 (Frankfurter, J., dissenting). The answer, of course, depends on the particular enactment under which review is sought. It turns on "the existence of courts and the intent of Congress as deduced from the statutes and precedents." *Id.,* at 308.

The Administrative Procedure Act provides that the provisions of the Act authorizing judicial review apply "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U. S. C. § 701 (a) (1964 ed., Supp. IV).

In *Shaughnessy* v. *Pedreiro,* 349 U. S. 48, 51, we referred to "the generous review provisions" of that Act; and in that case as well as in others (see *Rusk* v. *Cort,* 369 U. S. 367, 379–380) we have construed that Act not grudgingly but as serving a broadly remedial purpose.

We read § 701 (a) as sympathetic to the issue presented in this case. As stated in the House Report:

> "The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it.

The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review." H. R. Rep. No. 1980, 79th Cong., 2d Sess., 41.

There is no presumption against judicial review and in favor of administrative absolutism (see *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140), unless that purpose is fairly discernible in the statutory scheme. Cf. *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297.

We find no evidence that Congress in either the Bank Service Corporation Act or the National Bank Act [2] sought to preclude judicial review of administrative rulings by the Comptroller as to the legitimate scope of activities available to national banks under those statutes. Both Acts are clearly "relevant" statutes within the meaning of § 702. The Acts do not in terms protect a specified group. But their general policy is apparent; and those whose interests are directly affected by a broad or narrow interpretation of the Acts are easily identifiable. It is clear that petitioners, as competitors of national banks which are engaging in data processing services, are within that class of "aggrieved" persons who, under § 702, are entitled to judicial review of "agency action."

---

[2] Petitioners allege that the Comptroller's ruling violates the National Bank Act, Rev. Stat. § 5136, 12 U. S. C. § 24 Seventh, which provides that national banks have power to exercise "all such incidental powers as shall be necessary to carry on the business of banking."

We intimate no view, under the decisions rendered today here and in *Barlow* v. *Collins, supra,* on the issue of standing involved in No. 835, *National Association of Securities Dealers* v. *SEC,* and No. 843, *Investment Company Institute* v. *Camp,* now pending on petitions for writs of certiorari.

Whether anything in the Bank Service Corporation Act or the National Bank Act gives petitioners a "legal interest" that protects them against violations of those Acts, and whether the actions of respondents did in fact violate either of those Acts, are questions which go to the merits and remain to be decided below.

We hold that petitioners have standing to sue and that the case should be remanded for a hearing on the merits.

*Reversed and remanded.*

[For opinion of MR. JUSTICE BRENNAN, see *post*, p. 167.]