**ARNOLD TOURS, INC., et al., Plaintiffs, Appellants,**

v.

**William B. CAMP, Comptroller of the Currency, et al., Defendants, Appellees.**

**No. 7192.**

United States Court of Appeals, First Circuit.

June 1, 1970.

360

Richard W. Murphy, Braintree, Mass., with whom Timothy J. Murphy, Boston, Mass., was on brief, for appellants.

Alan S. Rosenthal, Atty., Dept. of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., and Herbert F. Travers, Jr., U. S. Atty., were on brief, for William B. Camp, Comptroller of the Currency, appellee.

Elliott V. Grabill, Boston, Mass., with whom Arthur H. Bloomberg, and Grabill & Ley, Boston, Mass., were on brief, for South Shore National Bank, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In Arnold Tours, Inc. v. Camp, 1 Cir., 1969, 408 F.2d 1147, in a joint opinion covering two actions against the Comptroller of the Currency and two national banks, this court, departing from another circuit that considered cases such as Tennessee Electric Power Co. v. TVA, 1939, 306 U.S. 118, 59 S.Ct. 366, 83 L. Ed. 543, determinative of the question, held that in one of these actions (Wingate), the plaintiff had standing to sue. Thereafter, in Association of Data Processing Service Organizations, Inc. v. Camp, 1970, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, hereinafter Data Processing, the Supreme Court, approving the Wingate result, but voicing less than total approval of our reasoning, reversed the other decision. It denied certiorari in ours. 3/23/70, 397 U.S. 987, 90 S.Ct. 1110, 25 L.Ed.2d 394.

In our other case (Arnold Tours) decided by that same opinion, we held that the plaintiffs lacked standing. The Court vacated our decision in Arnold Tours, and returned the case for our further consideration in the light of its decision in Data Processing, 3/23/70, 397 U.S. 315, 90 S.Ct. 1109, 25 L.Ed.2d 333. Following further briefs and oral argument we now respond.

Although the Court's opinion in Data Processing ran to several pages, part of it was devoted to disposing of the defendants' contention that Congress had provided against judicial review, a matter not here involved.[1] We believe the Court's entire pronouncement on the issue of standing is contained in the following.

"The 'legal interest' test goes to the merits. The question of standing is different. It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830.

With respect to certain language in the Wingate portion of our opinion, the Court said,

"We do not put the issue in those words, for they implicate the merits. We do think, however, that § 4[2] arguably brings a competitor within the zone of interests protected by it." 397 U.S. at 156, 90 S.Ct. at 831.

Plaintiffs assert that the Court's standard is different from the one we previously applied. This may be so in some slight degree. At one point we used the word "demonstrably" rather

---

1. In their brief plaintiffs either misunderstand this fact, or attempt to apply the Court's language addressed to the issue of reviewability to the issue of standing, to which it is not applicable. We have never questioned reviewability.

2. Section 4 of the Bank Service Corporation Act of 1962, 76 Stat. 1132, 12 U.S.C. § 1864, which provides: "No bank service corporation may engage in any activity other than the performance of bank services for banks."

than "arguably."[3] Elsewhere we said that unless section 4 "arguably prohibits direct entry by national banks into the data processing service business," plaintiff could have no standing. By this we meant that unless it could be argued that banks themselves fall within the penumbra of the statute directed against bank service corporations, the statute afforded plaintiff no shelter. Perhaps the "arguably" in this passage is more directed to the merits than the "arguably" in the Court's "zone of interest" formula. The question is academic so far as *Arnold Tours* is concerned. Under any standard, plaintiffs have no standing. They have produced no scintilla of evidence tending to show that Congress was specifically concerned with the competitive interests of travel agencies; nor have they shown enough evidence of concern for general business competitors to create a "zone" within which they are arguably included.

Plaintiffs contend that if section 4 of the Bank Service Corporation Act gives data processing companies standing it must do so for them as well, because it forbids bank service corporations from engaging in "any" activity beyond rendering services for banks. This is a misconception. The decision in *Data Processing* was not based on the wording of the statute, but on a showing that Congress, in connection with authorizing entities to engage in data processing for banks, had protection of data processing competitors specifically in mind. Plaintiffs have demonstrated nothing else.[4] Clearly the Court did not feel that the mere fact that they were in competition with the defendant bank gave them standing. Had it intended so substantial a change in the law it would not

only have written a quite different opinion in *Data Processing*; it would have reversed us out of hand.

The order of the District Court dismissing the complaint for lack of standing is affirmed.

---

3. "The prohibition must be demonstrably intended to protect the competitive interests of other members of the prohibited business." 408 F.2d at 1150.

4. In our previous opinion we observed that plaintiffs might establish standing if they could evidence "more proof of Congressional solicitude." Their only response has been to show that Congress has pres-

ently before it legislation aimed at preventing national banks from rendering travel services. We do not see how the fact that Congress is considering the question is of assistance to plaintiffs. As a practical matter it might suggest an additional reason for our ruling against the plaintiffs. Then, if we have misunderstood the intent of Congress, it may correct us.