**INTERCONTINENTAL PLACEMENT SERVICE, INC.**

v.

**James D. HODGSON, Secretary of Labor and John N. Mitchell, Attorney General.**

**Civ. A. No. 70–840.**

United States District Court, E. D. Pennsylvania.

June 1, 1971.

Orlow & Orlow, James J. Orlow, Philadelphia, Pa., for plaintiff.

Louis C. Bechtle, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

OPINION

JOSEPH S. LORD, III, District Judge.

Section 212(a) (14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (14), makes excludable from the United States all aliens seeking to come into this country for the purpose of gainful employment unless the Secretary of Labor has affirmatively determined and certified in his case that there is (a) not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States, and at the place to which the alien is destined to perform such skilled

or unskilled labor, and (b) the employment of such aliens will not adversely affect the wages or working conditions of the workers in the United States simarly employed. Pursuant to that section, § 212(a) (14), the Secretary of Labor promulgated regulations at 29 C.F.R. Part 60. They include two schedules of occupation relating to immigrants, Schedule A and Schedule B, and provide for a third Schedule C—Precertification List. Schedule A lists occupations for which certifications are made as a matter of regulations and Schedule B lists occupations for which certifications cannot be made as a matter of regulation. Schedule C–Precertification List is similar in effect to Schedule A. Schedule C was promulgated as provided in 29 C.F.R. 60.3(c). It was dated March 1, 1969 and consisted "of occupations for which the Secretary of Labor has determined that there are not sufficient workers who are able, willing, qualified and available for employment, and that the employment of aliens will not adversely affect the wages and working conditions of workers in the U. S. simarly employed." It further specified the geographic areas for which an occupation was not precertified.

After hearing and the submission of briefs, the relevant facts are determined to be as follows:

The plaintiff is a private employment agency for the commencement of which preparations were begun in September of 1969 and which was licensed to do business on February 5, 1970. The agency's principal service is the location of jobs in this country for entering aliens. In negotiating contracts between aliens and employers, the plaintiff relied on the precertification list, Schedule C.

On February 6, 1970, the Secretary of Labor suspended that entire list. No advance notice of rule making, or of the action to be taken was given; in fact, general public notice was not disseminated until around February 20 (N.T. 20, 21). The defendant Attorney General thereafter announced that consideration of petitions for visas which were in reliance on Schedule C would be suspended.

Plaintiff now seeks to enjoin defendants from the suspension of Schedule C and asks us to require defendants, by writ of mandamus, to follow the requirements and procedures associated with Schedule C until such time as the defendant Secretary of Labor shall revoke, modify or amend the schedule in accordance with the requirements of 5 U.S.C. A. § 553 (notice and opportunity to submit views prior to rule making).

Jurisdiction is founded upon 28 U.S. C.A. § 1331, since the action arises under statutes of the United States and involves a claim of value in excess of $10,000.

Defendants contend that (1) the plaintiff lacks standing, (2) the plaintiff has failed to meet the prerequisites necessary for injunctive relief, and (3) the actions of the defendants were in conformity with the regulations of the Department of Labor.

We have concluded that plaintiff lacks standing to bring the action. The test of standing that we must follow was set forth in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 830, 25 L.Ed. 2d 184 (1970). There the Court ruled that the question of standing:

"* * * concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. * * *"

One interest which the 1965 amendments to the Immigration and Nationality Act sought to protect was that of potential immigrants by the removal of the discriminatory nationality quota system.

Secondly, § 1182(a) of Title 8 U.S.C. provides:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission to the United States:

"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) *there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and* (B) *the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.* The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a) (27) (A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent resident), to preference immigrant aliens, described in sections 1153(a) (3) and 1153(a) (6) of this title, and to nonpreference immigrant aliens described in section 1153(a) (8) of this title." (Emphasis added.)

By this section Congress was obviously directing its efforts to the protection, through regulation, of the national economy and our existing work force. Congressman Celler, in explaining the impact of the bill pointed out that the bill provides for "regulatory discretion which resides in the Secretary of Labor in imposing conditions to keep out immigrants who would take the work away from Americans or depress wages and working conditions." (111 Cong.Rec. H. 21758.)

It is clear from the statute and its legislative history that Congress never intended to, and did not, confer any protection to the zone of interest of which plaintiff is a part, namely, employment agencies. There is a surface appeal to plaintiff's argument that it has a direct interest in the Secretary's procedures, since its business is affected by them. However, the question is not whether plaintiff has an interest. It is, rather, whether the statute was intended to protect that interest. Here, we think it clearly was not. Since it was not, plaintiff lacks standing to question either the substantive propriety or the procedural propriety of action taken pursuant to the statute.

The cases cited by plaintiff do not lead to a different conclusion.

In Association of Data Processing Service Organizations, Inc. v. Camp, supra, and Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970), the actions were brought against the Comptroller of the Currency by a computer services corporation and a travel agency respectively. In each case the comptroller had ruled that national banks could engage in the same activities that the plaintiffs were engaged in. In both cases the court ruled that § 4 of the Bank Services Corporation Act "arguably brings a *competition* within the zone of interests protected by it." (Emphasis added.)

Here, plaintiff is not in any way a competitor. The Secretary of Labor's ruling did not increase plaintiff's competition; it merely changed immigration procedures.

In Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the court found standing in tenant farmers to challenge an amended regulation issued by the Secretary of Agriculture. The basis for that conclusion was the finding that the Food and Agriculture Act of 1965 implicitly states in its statutory provisions and legislative history a Congressional intent to protect the in-

terest of tenant farmers. Nowhere is there any indication that Congress had a like intent concerning employment agencies in the Immigration and Nationality Act.