**ARNOLD TOURS, INC., et al.**

v.

**William B. CAMP, Comptroller of the Currency, and South Shore National Bank.**

**Civ. A. No. 67–372–C.**

United States District Court,
D. Massachusetts.

Feb. 22, 1972.

Timothy J. Murphy and Richard W. Murphy, Boston, Mass., for plaintiffs.

John E. Shockey, Office of the Comptroller of the Currency, Washington, D. C., and Joseph L. Tauro, U. S. Atty., for the Dist. of Mass., for William B. Camp, Comptroller of the Currency.

Elliot V. Grabill and Arthur H. Bloomberg, of Grabill & Ley, Boston, Mass., for The South Shore National Bank.

### OPINION

CAFFREY, District Judge.

The plaintiffs in this case are forty-two independent travel agencies doing business in various locations in the Commonwealth of Massachusetts. They ask herein for declaratory and injunctive relief against the Comptroller of the Currency and against The South Shore National Bank. Plaintiffs seek from this court a decision that a ruling by the

Comptroller providing that, incidental to their banking services national banks may provide travel services for their customers, violates the powers granted to the Comptroller by the National Bank Act, 12 U.S.C. § 24(Seventh). Plaintiffs allege that the Comptroller exceeded his statutory authority when he issued regulations authorizing national banks to provide travel agency services, and plaintiffs further allege that as a result they have lost substantial business and profits and stand to lose even greater business in the future. For the reasons stated hereinafter, I agree.

This rapidly aging matter has already been subjected to the attention of this court at numerous hearings, has twice been argued and decided by the United States Court of Appeals for this Circuit, and has twice been the subject matter of rulings of the Supreme Court of the United States on the basis of petitions for writs of certiorari which were granted in both instances. See 286 F. Supp. 770, aff'd. 408 F.2d 1147 (1 Cir. 1969), vacated and remanded 397 U.S. 315, 90 S.Ct. 1109, 25 L.Ed.2d 333. See, also, 428 F.2d 359 (1 Cir. 1970), reversed and remanded 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179.

■ The matter is now before this court on cross-motions for summary judgment, which have been extensively briefed by the parties. The narrow issue is, as stated by the Comptroller in a supplementary memorandum in support of his motion for summary judgment:

"whether the Comptroller can reasonably interpret 12 U.S.C. 24(Seventh) to authorize the operation of a travel agency by a national bank as incident to its banking business."

To properly understand the issue, it should be noted that the statute, the proper construction of which is the key to the outcome hereof, states as follows:

"A national banking association shall have the power to exercise by its board of directors . . . all such incidental powers as shall be neces-

sary to carry on the business of banking."

In deciding whether the operation of a travel agency business comes within the quoted language from 12 U.S.C. § 24, attention should next be focused on what, specifically, operating a travel agency entails on the part of the South Shore National Bank. The extent and nature of· this activity qua travel agency has been described in detail in the Affidavit of Charles F. Heartfield, who served as vice-president in charge of the Travel Department of the South Shore National Bank from about November 1, 1966 to 1970. In pertinent part, the affidavit of Mr. Heartfield describes the travel agency business as follows:

"A travel department is a functioning complete travel service bureau within the confines and control of the bank. It is a department store of travel, staffed by knowledgeable people, trained in the techniques of selling every mode of transportation—air, rail, steamship, U-drive car. It is a staff acquainted with thousands of hotels and resorts, proficient in the intricacies of foreign customs and regulations, health requirements and languages, accustomed with tipping customs, foreign exchange, conversant with foreign representatives and hotel managers, in the history and geography of our own great United States, as well as the rest of the shrinking world, constantly aware of changing tariffs and schedules, well acquainted with over 60 airlines throughout the world, 40 domestic and international railroads, and numerous motorcoach lines, steamship companies, etc. They must be up-to-date in passport, visa and sailing permit information.

"They must be specially trained and experienced in the preparation and planning of itineraries. They must be ready to acquaint the traveler with climate conditions, wardrobe and packing suggestions. They must have unlimited knowledge of foreign car purchases, U-drive-it regulations and costs. They must be ready with shop-

ping suggestions and must be able to advise on travel accident and baggage insurance.

"They must be able to arrange transfers and sightseeing, and must be aware of the proper assessments, head taxes, port taxes and transportation taxes. They must be knowledgeable in what to see and what to do, theatre tickets, ballet, opera, horse shows, yachting events, -and, -at their finger tips, a good travel staff has hundreds of tours, ranging from a weekend in New York to an African safari. A good travel agent's experience and interest lends the proper emphasis to his client's desires. He can put himself in the place of his customer. He must discover the traveler's budget and give him the most for his money —and here the bank's Pay Later Plan will be invaluable.

"The well-trained agent is able to decide whether his client should go by air or sea, or a combination of both, which cruise will please his client the most, which hotel will satisfy his client's taste, whether a motorcoach or a chauffeur-driven sightseeing trip will be the answer to his client's wishes. There are escorted and independent tours. Each has its own advantages. There are basic trips, charters, all-expense trips, and special flights. The agent's knowledge must encompass information on bike rentals in Bermuda to villa rentals on the Riviera to a houseboat in Kashmir. To sum it up, a good travel department is a personalized department store of travel."

To say that conduct of a business of the nature and type described by Mr. Heartfield is a *sine qua non* to the successful operation of a national bank is a self-refuting proposition, especially in view of the fact that on the defendants' own claim only 122 national banks out of the many hundreds if not thousands in existence were providing travel agency services in 1967.

I find that defendants' argument that because the bank may engage in selling letters of credit, travelers' checks and foreign currency, or make travel loans, it therefore should also be allowed to engage in the travel business, is a complete *non sequitur*. Selling travelers' checks or foreign currency, issuing letters of credit or making loans, are all financial transactions as they involve money or substitutes therefor, and all are obviously within the normal traditional range of monetary activities of a national bank. The difference between these activities and conducting a travel agency is just as great as the difference between these activities and running a mill, which was proscribed many many years ago in Cockrill v. Abeles, 86 F. 505 (8 Cir. 1898). Nor do the defendants gain any support from the fact that national banks rent out safe-deposit boxes, since this type of activity is specifically recognized as a permissible activity by 12 U.S.C. § 24(Seventh), which, to the extent that it allows banks to conduct safe-deposit business, restricts their investing in the capital stock of corporations organized under any state law to conduct a safe-deposit business in an amount in excess of 15 per cent of the capital stock of such corporations.

The Comptroller and the bank contend that great deference should be given by this court to what they characterize as an unbroken line of administrative rulings over a period of thirty years supporting the contention that banks may engage in the travel business. A review of the documentation before me indicates that in 1936 the Deputy Comptroller wrote a letter in response to a complaint that national banks were engaging in the travel business, in which letter the Deputy Comptroller took the position that a bank could act as a collection agent as long as its sole duty was to deliver travel tickets and place the amount collected therefor to the credit of its customers, but the same letter expressly prohibited the bank from purchasing travel tickets with the bank's own funds and reselling them.

In 1949, the Comptroller indicated, through Rule 67, that banks could not

engage in the regular travel agency business in the same manner as a private travel agency, but further stated that if a bank did not hold itself out to the public as an operational travel agency it would be permitted to merely assist its customers in acquiring accommodations, as a gratuitous public relations service tending to foster good will.

In 1959, the Comptroller promulgated a ruling, which appeared in 12 C.F.R. 7.1, which in pertinent part stated:

> ". . . It appears clear that national banks, may as an incidental power, provide travel services for their customers, as they have been doing for many years, and that they may have the reasonable rights and benefits that flow therefrom."

This ruling, being keyed to past practices and rulings by the language "as they have been doing for many years," amounted to no more than a restatement of the narrow permission contained in the 1936 and 1949 rulings of the Comptroller. Accordingly, it is not accurate to say that the 1963 ruling, found in paragraphs 7475 and 7376 of the Comptroller's Manual for National Banks, issued as a supplement to 12 C.F.R. 7.1, is a continuation of an unbroken series of consistent administrative rulings, but, on the contrary, to the extent that these paragraphs grant a national bank *carte blanche* to take over the complete operation of a travel agency, as described in the above-quoted affidavit of Mr. Heartfield, they represent a radical departure from the past administrative rulings and, consequently, they have a correspondingly weakened precedential value.

Attention should be focused on a semantic difficulty which runs through the briefs filed herein, namely, that the phrase "travel services" can mean different things at different times and to different people, and the fact that in 1865 a national bank offered "travel services," the exact nature and extent of which are nowhere spelled out, does not establish any precedent for a bank now conducting a full-blown travel agency,

there being obvious differences between the conduct of a complete travel agency with all its ramifications and the performing of "travel services," which could mean no more than issuing a letter of credit from time to time or selling travelers' checks from time to time. By the same token it would seem to be grasping at straws for the Comptroller to urge affirmance because the National Bank Act of 1864 had among its purposes "facilitating travel." Travel can be facilitated in a number of ways without ever engaging in a full-blown travel agency operation.

■■ Lest there be any ambiguity as to this court's position as to the scope of review in light of the two rulings of the Supreme Court cited above, I rule that plaintiffs do have standing to bring this action in light of the *per curiam* opinion of the Supreme Court, reported at 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970), and I likewise rule that the scope of review by this court is not merely to determine whether or not the ruling of the Comptroller had a "rational" basis, but, on the contrary, the scope of review is to determine whether or not the regulations issued by the Comptroller are authorized by 12 U.S.C. § 24(Seventh). In so ruling I have in mind the observation of the Supreme Court in Barlow v. Collins, 397 U.S. 159, at 166, 90 S.Ct. 832, at 837, 25 L.Ed.2d 192 (1969):

> "[S]ince the only or principal dispute relates to the meaning of the statutory term, the controversy must ultimately be resolved, not on the basis of matters within the special competence of the Secretary, but by judicial application of canons of statutory construction."

Accordingly, I rule that the full scale operation of a travel agency by a national bank is not an incidental power necessary to carrying on the business of banking. As a corollary of this ruling, I further rule that the Comptroller exceeded his authority by ruling, purportedly under the authority of 12 U.S.C. §

24(Seventh), that a national bank may engage in the operation of a complete travel agency.

Finally, I rule that there is presently outstanding no genuine issue of material fact. Accordingly, the plaintiffs' motion for summary judgment is allowed and defendants' motions for summary judgment are denied.

An order will be entered declaring (1) that the Comptroller's regulation, 12 C.F.R. 7.1, is invalid as in excess of his powers, and (2) that the South Shore National Bank shall divest itself of its Travel Department within six months from the date of the filing of this order and the said bank is permanently enjoined thereafter from engaging in the travel agency business.