**HONEYWELL INFORMATION SYSTEMS, INC., Plaintiff,**

v.

**Luther H. HODGES, Jr., Acting Secretary of Commerce, et al., Defendants.**

**CONTROL DATA CORPORATION, Plaintiff,**

v.

**Luther H. HODGES, Jr., Acting Secretary of Commerce, et al., Defendants.**

**BURROUGHS CORPORATION, Plaintiff,**

v.

**Luther H. HODGES, Jr., Acting Secretary of Commerce, et al., Defendants.**

**SPERRY CORPORATION, Plaintiff,**

v.

**Luther H. HODGES, Jr., Acting Secretary of Commerce, Defendant.**

**Nos. CA 79–2715 to 79–2717 and CA 79–2790.**

United States District Court, District of Columbia.

Jan. 30, 1980.

---

Milton Eisenberg, Washington, D. C., for Honeywell Information Systems, Inc.

Eldon H. Crowell, W. Stanfield Johnson, George D. Ruttinger, Washington, D. C., for Control Data Corp.

George L. Christopher, Washington, D. C., for Burroughs Corp.

Hadrian R. Katz, Washington, D. C., for Sperry Corp.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., for all defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiffs in these four cases bring these actions seeking declaratory judgments and injunctive relief with respect to four Standards, relating to automatic data processing (ADP) equipment, which were promulgated by the Secretary of Commerce. The Standards established mandatory specifications applicable to federal procurement of ADP equipment, for the interface between central processing units (computer mainframes) and magnetic tape and disc

storage facilities (peripheral subsystems). The Standards are substantially identical to specifications developed more than fifteen years ago and currently utilized by the International Business Machine Corporation (IBM). The plaintiffs seek a declaratory judgment that the Standards are invalid, and an injunction against their enforcement on the grounds that the Standards (a) are arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law, (b) are in excess of the defendant's statutory jurisdiction, authority and limitations; and (c) were promulgated without observance of procedures required by law.

### I

The plaintiffs, Honeywell Information Systems, Inc., Control Data Corporation, Burroughs Corporation and Sperry Corporation are all involved in the design and manufacture of ADP systems and each has substantial contracts with the federal government. The defendants named in these actions are the Secretary of Commerce, who promulgated the Standards, the Administrator of the General Services Administration, who is charged with implementing the Standards by including them in the Federal Property Management Regulations, and the Director of the Office of Management and Budget, who had responsibility for exercising fiscal and policy control over the development of the Standards.[1]

In promulgating the Standards, the Secretary purported to rely upon the authority of the Brooks Act (Act), 40 U.S.C. § 759. The Act is an amendment to the Federal Property and Administrative Services Act of 1949, 40 U.S.C. §§ 471 et seq.

The plaintiffs contend that the Standards are discriminatory in that they discriminate against systems manufacturers like plaintiffs whose equipment does not conform to the IBM based specifications, and favor in addition thereto, Japanese manufacturers; that the Standards are anticompetitive in that all systems manufacturers, except IBM, would be required to undertake costly modifications of their systems architecture and softwear in an effort to make their mainframe and peripheral systems conform to the Standards at great expense in time and costs; that the Standards are technologically obsolete, having been developed more than fifteen years ago; and that they will deprive the federal government of the "significant cost/performance advantages that technological innovations in computer circuitry offers."

The injury to plaintiffs allegedly results from the fact that each would be required to expend considerable time and money to conform with the Standards, or in lieu thereof, would suffer the loss of federal government contracts which constitute a substantial portion of their business.

### II

The plaintiffs filed these cases in October 1979. Shortly thereafter, they filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. They requested an expedited hearing on their motions since at that time they believed the Standards were to go into effect on December 13, 1979, but did not pursue that request when the effective date of the Standards was extended to June 23, 1980. The defendants filed motions to dismiss and shortly thereafter, responded to the pending motions for summary judgment, by filing motions to continue any hearing on the motions for summary judgment in order to allow them to undertake discovery. See Fed.R.Civ.P. 56(f). The plaintiffs filed oppositions to the Rule 56(f) motions and requested that the Court require defendants to file their responses to the motions for summary judgment and to rule on the merits.

This Court reviewed the defendants' motions to dismiss and concluded that they raised a substantial issue of standing. Those motions, if decided adverse to the plaintiffs, would be dispositive of these cases. Plaintiffs were directed to file their oppositions to the motions to dismiss, which they did within the time set by the Court, and the Court heard oral arguments on

---

1. Not all defendants were named in each case.

those motions on January 4, 1980. The Court has withheld action on both the plaintiffs' motions for summary judgment and the defendant's motions for a continuance and discovery under Rule 56(f) pending its ruling on the defendants' motions to dismiss.

The defendants move to dismiss on several grounds, namely, that the plaintiffs lack standing to challenge the Standards issued under the Brooks Act, that the Court lacks jurisdiction over the subject matter of these actions, and that the complaint fails to state a claim upon which relief can be granted. This Court's review of the applicable law leads it to conclude that the plaintiffs lack standing to pursue their challenge to the Standards and that accordingly, these actions should be dismissed on that ground.

### III

■ In order to maintain these actions, the plaintiffs must demonstrate that they have standing to sue. That doctrine has two sources, first is the case or controversy requirement of Article III of the Constitution, and second the "judicially imposed rules of self restraint" or "prudential limitations" imposed by the courts. *Tax Analysts & Advocates v. Blumenthal*, 184 U.S. App.D.C. 238, 245, 566 F.2d 130, 137, *cert. den.* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1977). With respect to the standing limitation under Article III it relates to whether the dispute is presented in an adversary context in the sense that the plaintiff has a personal stake in the outcome of the litigation. *Flast v. Cohen*, 392 U.S. 83, 98, 101, 88 S.Ct. 1942, 1951, 1953, 20 L.Ed.2d 947 (1968). Here, the plaintiffs meet that test since they allege that as major suppliers to the federal government, they stand to lose time and money and possibly their government contracts constituting a substantial portion of their business, in the event the challenged Standards become effective.

■ The second half of the standing doctrine however, is another matter. That doctrine incorporates what has come to be known as the "zone of interests test". *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Tax Analysts & Advocates v. Blumenthal, supra*, 184 U.S.App. at 247, 566 F.2d at 139. This test has been described as posing the question "whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question". (Emphasis this Court's.) 397 U.S. at 153, 90 S.Ct. at 830.

In considering this sometimes elusive doctrine, courts have viewed the subject statute, and often, its legislative history, to determine whether the interest the complainant seeks to protect is arguably within the zone of interests protected by the statute. In one case it was held that petitioners who sold data processing services had standing to challenge a ruling by the Comptroller of the Currency which purported to allow national banks to provide data processing services to its customers and other banks in competition with petitioners. Standing was based on the fact that the statute, 12 U.S.C. § 1864,[2] restricted banks to services normally performed by banks. When the Comptroller permitted the banks to engage in services outside of those proscribed by the statute in competition with the petitioners, the petitioners had standing to sue, the court concluding that the interest asserted by the petitioners was arguably within the zone of interests to be protected or regulated by the statute in question. *Association of Data Processing Service Organizations, Inc. v. Camp, supra*. The court's ruling, although not always correctly interpreted, *see e. g., Arnold Tours, Inc. v. Camp*, 428 F.2d 359 (1st Cir.) *reversed and remanded*, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970), was grounded on the fact that the statute restricting the activities of banks indirectly protected potential

---

**2.** 12 U.S.C. § 1864 provides that "[n]o bank service corporation may engage in any activity other than the performance of bank services for banks.

competitors and placed them, at least arguably, within the zone of interests. In *Arnold Tours, Inc.*, cited above, the Supreme Court held that travel agents had standing to challenge a ruling by the Comptroller of the Currency pursuant to the interest protected under the same statute as above, 12 U.S.C. § 1864, after the Comptroller permitted banks to provide travel services for their customers. In *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971), the court held that petitioners, which operated mutual investment funds, had standing to challenge the Comptroller's approval of a bank's application to establish and operate a competing fund. An even clearer case is found in *Barlow v. Collins, supra*, where the court concluded that the statute and its legislative history demonstrated an intent by Congress to protect the interest of petitioners who were tenant farmers. Thus, petitioners in that case had standing to challenge amendments to regulations issued by the Secretary of Agriculture which the tenant farmers contended were adverse to their interest.

█ While the statutes involved in the above cases *arguably* protected, either directly or indirectly, some interest of the complainants who sought to challenge actions purportedly undertaken contrary to the statutes, the same is not true of the Brooks Act or for that matter, the Federal Property and Administrative Services Act. This Court finds nothing in the Act which implies that it was directly or indirectly designed to afford protection for these plaintiffs. Indeed, while the statutes in the above cited cases were regulatory, the statute involved here is not. The Brooks Act is merely designed to establish a more economic and efficient system for procurement of ADP equipment by the federal government. Likewise, a perusal of its legislative history reveals nothing which would suggest an intent by Congress to protect the interests of these plaintiffs. *See, e. g.*, S.Rep.No.938, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Admin.News 1965, p. 3859. Thus, while the plaintiffs may suffer an economic loss and may well

be a logical party to challenge the Standards, the interests they assert do not fall within the requisite zone of interest protected by the Act.

Plaintiffs attempt to bring themselves within the holding of *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), and *Ballerina Pen Co. v. Kunzig*, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970), but those cases are readily distinguishable. Both involved disappointed bidders for government contracts who were held to have standing. In *Scanwell* the plaintiff was invited to bid on a contract and when unsuccessful, challenged the award made to the lowest bidder on the grounds that that bid did not comply with the terms of the invitation to bid. Although the court in *Scanwell* did not discuss the zone of interests test, that test having been formulated thereafter in *Association of Data Processing Service Organizations, Inc. v. Camp, supra*, it appears to this Court that the *Scanwell* court came close to articulating such "a test" and that the decision in that case is not inconsistent with later decisions applying the zone of interests test. In *Ballerina Pen*, the plaintiff challenged the actions of the General Services Administration which added ball point pens and refills to the schedule of Blind-Made Products to be purchased by the government and issued a letter of commitment to National Industries for the Blind (NIB) which guaranteed purchases from it of 70% estimated annual requirements for all ball point pens and refills. The Court found standing applying the zone of interest test noting that the legislative history of the statute reflected an intention by Congress that the NIB not go into competition with private industry. 140 U.S.App.D.C. at 106–7, 433 F.2d at 1212–1213.

The Court, having concluded that the plaintiffs lack standing, it follows that these cases must be dismissed. Since the ruling on standing is dispositive, the Court need not address the other arguments made by defendants.

Appropriate orders, consistent with this decision shall be entered in each case.