**Ralph NADER, Plaintiff,**

v.

**John VOLPE, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 975–70.**

United States District Court,
District of Columbia.

Dec. 11, 1970.

William A. Dobrovir, Washington, D. C., for plaintiff.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for defendant.

———

CURRAN, District Judge.

### MEMORANDUM AND ORDER

On October 27, 1970, this case came before the Court for a hearing. At that time four motions had been presented for consideration, 1) motion of plaintiff for summary judgment, 2) motion to join a party plaintiff, 3) motion of plaintiff for production of documents, and 4) motion of defendant to dismiss.

This action was filed on April 1, 1970, against the Secretary of Transportation (hereafter called the Secretary), the Director of the National Highway Safety Bureau, and the National Safety Bureau, seeking declaratory judgment, injunctive relief, and an order in the nature of mandamus. The controversy arose when the Federal Highway Administrator granted a time extension to Checker Corporation in order to enable it to comply with a Motor Vehicle Safety Standard. The plaintiff contends that the Department of Transportation is without authority to grant such extensions as to a single manufacturer.

Under the authority of the National Traffic & Motor Vehicle Safety Act of 1966, 80 Stat. 718, as amended, 15 U.S.C. § 1381 et seq. (hereafter called the Act), the Secretary of Transportation is empowered to establish safety standards for motor vehicles and motor vehicle equip-

ment.[1] Consequently on August 16, 1968, pursuant to 15 U.S.C. § 1392(a) and (c), the Secretary issued Motor Vehicle Safety Standard No. 212 (hereafter called Standard No. 212) with an effective date of January 1, 1970, more than sixteen months away. Standard No. 212 required that 75% of the windshield periphery in passenger cars be retained in its mounting when the vehicle is crash-tested into a solid barrier at not less than thirty miles per hour.

On September 9, 1969, Checker Motors Corporation unsuccessfully crash-tested a prototype vehicle and advised the Bureau, on September 19, 1969, of its problems. Further tests were conducted and on or about November 18, 1969, Checker advised the Bureau that its windshield complied with Standard No. 212. Due to engineering and tooling changes, Checker petitioned the Administrator, by a letter dated December 3, 1969, for an extension of the effective date of Standard No. 212 from January 1, 1970, to October 1, 1970. The petition for an extension was granted by the Administrator, said extension to run from January 1, 1970, to July 1, 1970. Finally, subsequent to the filing of this suit, Checker advised the Bureau that, beginning April 15, 1970, it was manufacturing motor vehicles in compliance with Standard No. 212 and requested termination of the extension, which was done.

Before the Court reaches the main issue in the case, two threshold questions, mootness and standing, must be faced.

The defendant asserts that since Checker eventually complied with Standard No. 212 in April, 1970, the case is now moot. Plaintiff states that since the Department of Transportation might again grant such a single manufacturer extension, the case is not moot.

By way of post-hearing memorandum, the Government has informed the Court that the Secretary feels that the Department of Transportation does have the authority to grant such extensions to a single manufacturer, and under appropriate circumstances, would consider granting them.

The Court finds that the case is not moot and that declaratory judgment is proper. The particular act complained of in this case, though it has been corrected, might and probably will be repeated in the future and consequently the issues remain justiciable. Declaratory judgment will be rendered to define the rights and obligations of each party.[2]

The Court also finds that the plaintiff has standing to bring this suit. The plaintiff meets the three criteria for standing, as enumerated by the Supreme Court in Association of Data Processing Service Organizations, Inc., v. Camp, Comptroller of the Currency of the United States et al., 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). First, the action taken by the Department of Transportation has caused him injury in fact in that as a member of the National Motor Vehicles Safety Advisory Council, plaintiff is officially charged with the responsibility of advancing the public interest in safe motor vehicles, and the extension granted Checker has placed unsafe automobiles on the road and thus conflicts with plaintiff's duties. Secondly, plaintiff falls within the "zone of interest" sought to be protected by the statute. The purpose of the Act, as set

1. The original Act conferred authority to issue safety standards on the Secretary of Commerce, 15 U.S.C. §§ 1392(a), 1391(10). By subsequent legislation, Congress transferred all powers of the Act to the Secretary of Transportation, 49 U.S.C. § 1655(a) (6) (A). The Secretary had delegated these powers, with several exceptions not relevant here, to the Federal Highway Administrator (hereafter called the Administrator) until March 22, 1970, at which time they were withdrawn and delegated to the National Highway Safety Bureau (hereafter called the Bureau) contemporaneous with the Bureau's separation from the Highway Administrator and elevation within the Department to the status of an Administration. 35 Fed.Reg. 4955.

2. 6A Moore's Federal Practice, Sec. 57.13, at p. 3075.

forth in 15 U.S.C. § 1381, is "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents". Considering his position on the Council, his well known crusade for auto safety, and the mere fact that he uses automobiles for transportation, all these facts, in light of the stated purpose of the Act, fulfill the "zone of interest" test. The final criterion, that Congress has not sought to preclude judicial review, is also met in this case. The Act specifically provides for appellate review in Section 1394.

The final question to be decided in this case is whether or not the Department of Transportation has the authority to grant extensions of the effective date of a Federal Motor Vehicle Safety Standard as to a single car manufacturer. The Court finds that he does not have such power.

The Act is found in 15 U.S.C. § 1381 to § 1425. The sections dealing with the area of amendments and revocations are Sections 1392(e) and 1410.

Section 1392(e) provides:

"The Secretary may by order amend or revoke any Federal motor vehicle safety standard established under this section. Such order shall specify the date on which such amendment or revocation is to take effect which shall not be sooner than one hundred and eighty days or later than one year from the date the order is issued, unless the Secretary finds, for good cause shown, that an earlier or later effective date is in the public interest, and publishes his reasons for such finding."

Section 1410(a) provides:

"Upon application made by a manufacturer at such time, in such manner, and containing such information as the Secretary shall prescribe, he shall temporarily exempt a limited production motor vehicle from any * * * standard established under this subchapter * * *."

In Section 1410(c), "limited production motor vehicle" is defined as one produced by a manufacturer whose total production does not exceed five hundred cars annually.

In this case, the Government argues that an administrative agency has not only express authority but also implied authority to carry out the import of its statute. Since there is no express authority in the Act to extend time to a single manufacturer, they argue that this extension can be implied. Since Section 1392(e) allows for an industry-wide extension from a safety standard, the Government argues that, *a fortiori,* the Department can grant the extension to a single industry.

The Court notes that when the Act was originally adopted, Section 1410 did not exist. At first, the Department of Transportation did not feel that it had the statutory authority to grant single manufacturer extensions, but due to the hardship felt by some small manufacturers of specialty cars, the Congress enacted Section 1410. This section, however, is specifically limited to manufacturers who annually produce five hundred cars or less.

Thus, when there was an awareness on the part of Congress that special provisions should be made for single manufacturers, such provisions were restricted. Congress did not provide extensions for single car manufacturers across the board. In fact, from the action it did take, it is logical to presume that it never intended to have a single manufacturer extension for producers who exceeded the five hundred vehicle limit, and the Court so holds.

It is, therefore, this 11th day of December, 1970,

Ordered that the motion of plaintiff for summary judgment be and hereby is granted; and it is further

Ordered that the motion of defendant to dismiss be and hereby is denied; and it is further

Ordered that the motion of plaintiff to join a party plaintiff be and hereby is denied; and it is further

Ordered that the motion of plaintiff for production of documents is declared moot.