**Ronald BRADLEY et al., Plaintiffs,**

v.

**William G. MILLIKEN, Governor of the State of Michigan, et al., Defendants.**

Civ. No. 35257.

United States District Court, E. D. Michigan, S. D.

Dec. 19, 1975.

Louis R. Lucas, Ratner, Sugarmon & Lucas, Memphis, Tenn., for plaintiffs.

George T. Roumell, Jr., Riley & Roumell, Detroit, Mich., Theodore Sachs, Marston, Sachs, O'Connell, Nunn & Freid, Detroit, Mich., George L. McCargar, Jr., Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The defendants in this school desegregation suit, 78 separate and identifiable school districts in Wayne, Oakland and Macomb Counties,[1] have joined in a Motion to Strike, For More Definite Statement and For Additional Relief. Defendants contend that the plaintiffs' Second Amended Complaint is vague and indefinite, that it fails to comply with this court's April 29, 1975 order, that it contains immaterial allegations that should be stricken or in the alternative made more definite because they do not comply with Rule 8 of the Federal Rules of Civil Procedure, that it contains averments dealing with issues the Supreme Court has already decided do not justify interdistrict relief, which should be stricken, and that it contains a number of averments alleging only residential racial segregation, which are not material in a school desegregation case and should be stricken. Finally, the defendants contend that plaintiffs lack standing to maintain this action for interdistrict relief.

We deal first with the issue of standing. Defendants argue that the recently decided Supreme Court case of *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (decided June 25, 1975), compels the conclusion that plaintiffs herein lack standing to sue. In *Warth*, the Supreme Court decided that plaintiffs, various organizations and individuals residing in the Rochester, New York metropolitan area, did not have standing to challenge alleged exclusionary zoning practices of the neighboring community

---

1. The only school district in the tri-county area that is excluded is the Pontiac, Michigan, School District.

of Pennfield, New York. Defendants argue that, according to *Warth*, plaintiffs herein, residents of Detroit, lack standing to challenge alleged discriminatory housing patterns in the surrounding suburban areas.

While we are of course bound by the Supreme Court's decision in *Warth*, we do not believe that it applies to the situation here. In *Warth*, the decision that plaintiffs lacked standing was grounded upon the plaintiffs' inability to demonstrate that the acts alleged caused injury to themselves, rather than other unidentified members of the class to which they belonged. In *Warth*, none of the petitioners had a present interest in any Pennfield property, none was himself subject to the strictures of the ordinance, and none had ever been denied a variance or permit by the respondent officials. Plaintiffs' alleged injury was the deprivation of housing opportunities in Pennfield, but as the Court pointed out, they were unable to show that members of their class would have lived in Pennfield but for the complained-of conduct. In contrast, plaintiffs herein have not complained merely that they have been deprived of housing opportunities in the suburban school districts; they complain that such deprivation has had the effect of *causing segregation in the schools of the City of Detroit.* Thus, the injury in fact that the plaintiffs have alleged is the segregation of the Detroit schools, not the denial of housing opportunities in suburban communities. This is an injury suffered by plaintiffs themselves, not by other unnamed third parties.

█ Thus, since *Warth* is inapplicable, plaintiffs' standing to aver and establish interdistrict equal protection violations must be determined by the test first announced in *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Court there announced that the "gist of the question of standing" is whether the parties seeking relief have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." The Supreme Court reaffirmed this test in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153–154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970):

> "The question of standing . . . concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."

Standing in this context thus requires that plaintiffs themselves were injured in fact (i. e., have a sufficient interest in the outcome of the litigation) and be arguably within the zone of interest sufficiently to assure the advocacy essential in an actual case or controversy. The plaintiffs here have already established injury resulting from the segregation found to exist in the Detroit city schools, and now aver that acts by the state and suburban defendants contributed to that injury. They have thus established that they are arguably within the constitutional guarantee in question and have clearly demonstrated a sufficient personal interest to assure the advocacy essential to the progress of the litigation.

█ Defendants' other objections to plaintiffs' standing to sue may be disposed of easily. Defendants argue that, to the extent that the class is composed of white persons, such persons lack standing to vindicate the rights of black persons. However, this argument lacks merit because segregation is an act that injures black and white alike. Defendants argue that under *Moose Lodge v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), plaintiffs have made no showing of injury in fact. This argument is grounded upon the defendants' failure to comprehend that the injury complained of is not the denial of housing opportunities in the suburbs, but segregation of the Detroit schools, an injury that has in fact occurred. See *Bradley*

*v. Milliken*, 338 F.Supp. 582 (E.D.Mich. 1971), aff'd 484 F.2d 215 (6th Cir. 1973), rev'd on other grounds, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). Defendants further argue that by making allegations concerning alleged discriminatory hiring practices in suburban school districts and other internal affairs of school districts other than Detroit, plaintiffs are attempting to assert the rights of third parties. But insofar as these allegations are raised not in and of themselves, but for their effect on segregation in the City of Detroit, they do relate to an injury suffered by plaintiffs themselves. Finally, defendants argue that plaintiffs are seeking to hold defendants responsible for the activities of state and governmental units over which they have no control. This argument is unsound: it addresses the sufficiency of the allegations, not the standing to maintain the action in the first instance.

Having concluded that plaintiffs have standing to sue, we now address ourselves to the merits of defendants' motion. Defendants make two separate objections to the allegations of plaintiffs' second amended complaint: (1) certain paragraphs should be stricken because they raise issues not material to a school desegregation suit, and (2) certain paragraphs should be stricken or, in the alternative, made more definite because they do not comply with the requirements of specificity in Rule 8, Fed.R. Civ.P.

Defendants have vigorously contended that all allegations of discrimination in the public and private housing markets, as set forth in paragraphs 12, 16, 17, 18, 19, 20, 25, 28 and 29 of the Second Amended Complaint, should be stricken as immaterial to school desegregation issues. Defendants argue that a racial imbalance alone does not violate constitutional rights and that, in any event school districts cannot be used as vehi-

cles for vindicating alleged housing discrimination unrelated to school district policies. Defendants contend that *Deal v. Cincinnati Board of Education*, 369 F.2d 55 (6th Cir. 1966); *Higgins v. Board of Education of City of Grand Rapids*, 508 F.2d 779 (6th Cir. 1974); *Spencer v. Kugler*, 326 F.Supp. 1235 (D.N.J.1971), aff'd 404 U.S. 1027, 92 S.Ct. 707, 30 L.Ed.2d 723 (1972); and *Swann v. Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), compel this result.

While the cases are confusing and at times contain conflicting conclusions, we do not agree that residential discrimination in the public and private housing markets is necessarily immaterial to the issue of segregation in public schools. For example, *Higgins v. Board of Education, supra*, does not support that proposition; the court there did not find that as a matter of law such allegations were immaterial, but found only that the proofs offered were insufficient to support the allegations. In *Deal v. Cincinnati Board of Education, supra*, the U. S. Court of Appeals held that the district court correctly excluded evidence of alleged housing discrimination because the proofs there established only *de facto* segregation, which the court found did not justify relief.[2]

■ We do not agree that the authority relied upon by the defendants compels us to strike these allegations. We believe that a proper reading of these cases is that, while allegations of housing discrimination standing alone are insufficient to support a finding of school segregation necessary to justify interdistrict relief, findings of housing discrimination will not excuse a finding of school segregation where the school districts involved have engaged in other segregative acts at some time in the past. In other words, allegations of housing discrimination are material if other sepa-

2. Similarly, in *Spencer v. Kugler*, 326 F.Supp. 1235 (D.N.J.1971) the court dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted, holding that the state had no affirmative duty to act where only *de facto* discrimination was found. But see *Ybarra v. City of San Jose*, 503 F.2d 1041 (9th Cir. 1974). While the *Ybarra* case is a distinct departure from *Deal*, the latter, being a Sixth Circuit case, is binding upon us.

rate acts of *de jure* segregation by the defendants are alleged and proved. Thus, in *Evans v. Buchanan*, 393 F.Supp. 428 (D.Del.1975) an interdistrict remedy was imposed because residential racial discrimination continued and contributed to the effects of prior *de jure* acts of discrimination. Here, the allegations contained in paragraphs 14 and 21(b), (c), (d), and (e), if taken as true, are sufficient to afford plaintiffs an opportunity to submit their proofs on housing discrimination. In paragraph 14, for example, plaintiffs allege that "[t]he availability of financial assistance and the operation of the state bonding and state aid formula enables suburban districts to make a larger per pupil expenditure despite less tax effort" and that this condition "affect[s] the racial characteristics of both city and suburban school districts . . . ." Paragraph 21 contains some allegations that are specific and, at least as far as the school districts cited, may support findings and conclusions in plaintiffs' favor.

■ Thus, although our order will require the plaintiffs to plead with greater specificity, we agree that their complaint alleges more than merely *de facto* segregation. The gravamen of plaintiffs' complaint is that acts taken by the state and suburban defendants, coupled with housing discrimination in public and private markets, have had the effect of segregating the Detroit schools. We are reminded that *de jure* acts of segregation have already been established as to the Detroit school district, a fact not present in the authority relied upon by defendants. In *Swann v. Board of Education, supra,* the Supreme Court stated:

> "We do not reach in this case the question whether a showing that school segregation is a consequence of other types of state action, without any discriminatory action by the school authorities, is a constitutional violation

requiring remedial action by a school desegregation decree. This case does not present that question and we therefore do not decide it." 402 U.S. at 23, 91 S.Ct. at 1279.

A complaint with proper averments established by adequate proof may well place that question, left undecided by *Swann,* before this court.

While we have found that plaintiffs' Second Amended Complaint contains allegations sufficient to survive a motion to strike, we do not mean to say that their complaint is completely satisfactory. Plaintiffs' present complaint was filed on April 29, 1975, pursuant to our April 16, 1975 Memorandum Order denying defendants' motion to dismiss and granting plaintiffs leave to amend. In that order, we encouraged plaintiffs to file "a proper amended complaint" and admonished them to "re-evaluate the evidence they intend to produce to establish interdistrict violations and name parties defendant accordingly." At that time, the court had for its consideration plaintiffs' First Amended Complaint, which was filed pursuant to an order by the U. S. Court of Appeals "to conform averments with the evidence and to add necessary defendants for remedial purposes." (April 16, 1975 Memo. Order.)[3]

We are unable to perceive any material differences between plaintiffs' First and Second Amended Complaints. Both complaints are full of vague, indefinite and conclusory allegations. In their Second Amended Complaint, plaintiffs have continued to name the same parties defendant, still referring to them as "original", "intervening", and "added suburban" defendants. Such terms indicate that the plaintiffs fail to perceive that the original phase of this litigation is over, and that they are in effect in a new lawsuit with new defendants. Rather than alleging precise interdistrict

---

**3.** We held that the First Amended Complaint was inadequate because "[it] was not filed to relitigate the cause, nor to litigate cross-district violations . . . The first amended complaint was filed to conform the pleadings to proofs which the Supreme Court found insufficient to justify metropolitan relief." (Order, April 16, 1975 at p. 5.)

violations against specifically named defendants, the plaintiffs have made wholesale allegations against all of the suburban defendants that were included in the so-called "desegregation area" by the late Honorable Stephen Roth when a metropolitan remedy was first before this court over three years ago. However, the court's order defining the "desegregation area" there did not consider the issue we face here: whether specific acts of segregation were committed by these districts to warrant an interdistrict remedy. *Milliken v. Bradley*, 418 U.S. 717, 733, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). For plaintiffs to persist in joining all 78 defendants in this action indicates to us that they do not perceive the precise holding of the *Milliken* decision:

> "Specifically, it must be shown that racially discriminatory acts of the state or local school districts, or of a single school district have been a substantial cause of inter-district segregation." 418 U.S. at 745, 94 S.Ct. at 3127, 41 L.Ed.2d at 1091.

In order to state a claim upon which relief may be granted, plaintiffs must be specific. They must allege and prove specific *de jure* acts of segregation committed by the state and/or one or more of the suburban defendants having the effect of segregating the Detroit city schools. Moreover, it is essential that these acts, as alleged and proved, have an effect on segregation in *Detroit*, since it is the Detroit plaintiffs who are seeking relief.

Accordingly, we conclude that paragraphs 12, 16–20, 25, 28 and 29, which allege nothing more than *de facto* housing discrimination, are vague, lack specificity and do not meet the requirements of Rule 8, Fed.R.Civ.P. The averments alleging specific acts of housing discrimination fail to allege specifically how such housing discrimination caused or contributed to school segregation in the City of Detroit. Further, these allegations do not allege with clarity whether the suburban districts committed these acts, which suburban districts committed these acts, or whether such allegations pertain solely to the state defendants. Moreover, if these averments apply only to the state defendants, they do not allege the causation or relationship to the Detroit city schools.

Even allegations that we cite herein as a possible basis for a finding of liability do not meet the requirements of specificity mandated by Rule 8. In paragraph 21, plaintiffs allege certain specific acts taken by certain specific defendants, but do not allege how, when and to whom these allegations relate and in what manner the acts alleged caused or contributed to segregation in the Detroit city schools. To survive a motion to strike, plaintiffs must allege facts specific enough to enable the defendants to defend. They must allege what the acts were, when they were committed, who did them, and what effect they had, if any, on segregation in Detroit.

Accordingly, IT IS ORDERED that defendants' motion to strike paragraphs 1, 3, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21(a), (b), (c), (d), 25, 26, 28, and 29 is denied;

IT IS FURTHER ORDERED that defendants' motion to strike the words "original", "intervening", "intervening suburban", "added" and "added suburban" from paragraphs 4, 5, 6, 7, 8 and 9 is granted;

IT IS FURTHER ORDERED that defendants' motion for a more definite statement as to paragraphs 12, 13, 16, 17, 18, 19, 20, 21(a), (b), (c), (d), 25, 26, 28 and 29 is granted.

IT IS FURTHER ORDERED that pursuant to Rule 12(e), Fed.R.Civ.P., plaintiffs shall file within twenty (20) days a Third Amended Complaint which contains specific and precise averments consistent with this Memorandum and Order, or face the granting of defendants' motion to strike such allegations. Such a Third Amended Complaint shall allege with specificity what acts were committed by what defendants, when they were committed, and what their effect was on segregation in Detroit, PROVIDED, HOWEVER, that plaintiffs,

within the twenty-day period, may apply to this court for additional time upon a showing of good cause.