UNITED STATES of America, Plaintiff,

v.

John Z. DeLOREAN, et al., Defendants.

No. CR82–910–RMT.

United States District Court,
C.D. California,
Criminal Division.

March 22, 1983.

---

Stephen S. Trott, U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Crim. Div., James P. Walsh, Jr., Asst. U.S. Atty., Chief, Major Narcotics Violators Unit, Layn R. Phillips, Asst. U.S. Atty., Major Narcotics Violators Unit, Los Angeles, Cal., for plaintiff.

Joseph A. Ball, Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., Howard L. Weitzman, P.C., Donald M. Re, P.C., Los Angeles, Cal., for defendants.

## MEMORANDUM

TAKASUGI, District Judge.

## INTRODUCTION

Any person with any conceptual understanding of our constitutional form of government must comprehend the unassailable wisdom underlying and supporting the Free Press and Fair Trial guarantees as enumerated in the first and sixth amendments. The ultimate ambition surrounding these constitutional rights was and is to insure and perpetuate a society of conscience. Born with and nurtured for the same purpose, one may find it improbable that hostilities can erupt as one clamors to prioritize and subordinate one constitutional right over the other. Regarding such rights as inviolable, as sacrosanct, does not mandate an inflexible interpretation. Viewing those rights with unyielding rigidity leads us astray in recalling the rationale for their existence. In essence, one such right serves the other; it serves the same master as they strive, under our circumstances, for the same goal—a fair and just trial for the criminally accused.

If the proponents of one constitutional right seeking a competitive edge over the other receive nothing from these statements, their motives for advancing such right are subject to serious inquiry.

The instant motion has been brought by the Associated Press and other members of the media who are interested non-parties ("AP").[1] The motion requests this court to vacate its December 22, 1982 order[2] requiring all documents submitted in the matter of *U.S. v. DeLorean, et al.,* CR82–910–RMT, to be filed *in camera* and under seal. The AP, relying primarily upon *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and *U.S. v. Brooklier,* 685 F.2d 1162 (9th Cir. 1982), argues that said order is invalid as violative of the public's first amendment right of access to criminal trials. Essentially, it is the position of the AP that this court may order a document sealed only after the document has, in the first instance, been publicly filed and after certain procedural and substantive requirements set forth in *Brooklier* have been met.

In *Richmond Newspapers,* the Supreme Court held that the public and the press, as representatives of the public, possessed a constitutional right to attend criminal trials. The Court left unanswered the question of what phases of the criminal process fell within the rubric of a "criminal trial." Similarly, the Court, while indicating that the right to attend criminal trials was not an absolute one, left unanswered the question of what standard was to be applied in determining the validity of a closure order. In *Brooklier,* the Ninth Circuit held that for purposes of first amendment access, the term "trial" encompassed both the process of voir dire and suppression motions, and a hearing on a defense motion for production

1. The AP and other members of the media, although non-parties to the instant action, have standing to bring the instant motion. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

2. The court's December 22, 1982 order states as follows:

IT IS ORDERED that all future filings of documents in the instant matter, including, but not limited to, briefs, affidavits, exhibits and papers, shall be *in camera.* Said documents shall be filed under seal in order to permit this court to initially review them and to make a determination with regard to dis-

closure based upon the defendants' rights under the Sixth Amendment and the First Amendment rights of the public as set forth in *U.S. v. Brooklier,* 685 F.2d 1162 (9th Cir. 1982).

This order in no way prohibits counsel from addressing the issue of sealing as to any particular document. Such comments shall be filed by the close of business on the date following service of the relevant document. All comments are to be filed *in camera.*

IT IS FURTHER ORDERED that in the future, all written materials and documents shall be hand-delivered to opposing counsel.

This order is effective forthwith.

of certain tape recordings.[3] In addition, the Court set forth certain procedural and substantive standards governing the closure of criminal trials to the public.

## I. *No First Amendment Right of Access to Documents*

■ The AP contends that it possesses a constitutional right of access to all documents filed in the instant matter. Its position is apparently derived from its reading of *Richmond Newspapers* and *Brooklier* as creating a first amendment right of access to all documents filed in connection with criminal trials. This court disagrees.

In *Richmond Newspapers,* the Court addressed the issue of whether or not the public possessed a constitutional right to attend criminal trials. The Court determined that a first amendment right of access did exist, but left undefined the exact parameters of the term "criminal trial." In *Brooklier,* the Ninth Circuit concluded that the term "criminal trial" encompassed both the process of voir dire and suppression motions and, accordingly, concluded that a first amendment right of access attached to those proceedings. However, neither the Supreme Court in *Richmond Newspapers* nor the Ninth Circuit in *Brooklier* indicated or suggested that the term "criminal trial" was so broad as to encompass all incidental documents filed during the course of a criminal proceeding so as to create a public right of access to these documents. Further, because both *Richmond Newspapers* and *Brooklier*[4] involved only the closure of actual in-court proceedings, it is doubtful that either court had occasion to consider the instant issue, i.e., whether there exists a first amendment right of access to documents filed in connection with a criminal proceeding. Thus, factually, neither *Richmond Newspapers* nor *Brooklier* controls.

■ This court finds that there exists no first amendment right of access to documents filed in connection with proceedings which fall outside the term "criminal trial."[5] However, in determining whether a constitutional right of access should be extended to documents filed in connection with "trial" matters, i.e., proceedings to which a constitutional right of access attaches, this court looks to the reasons underlying the Ninth Circuit's extension of a constitutional right of access to voir dire and suppression motions in *Brooklier.* In extending a first amendment right of access to voir dire, Chief Judge Browning, quoting from the recent Supreme Court decision in *Globe Newspaper Co. v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), noted that "two principal considerations underlying the public's first amendment right of access to criminal proceedings [were] '[f]irst, the criminal trial historically has been open to the press and general public,' and '[s]econd, the right of access to criminal trials plays a significant role in the functioning of the judicial process and the government as a whole.'" *Brooklier, supra* at 1167. This court recognizes that documents in criminal matters are normally filed publicly. However, this court is unconvinced that public scrutiny of and access to documents would, to any significant degree, enhance the quality of or contribute to the integrity of a criminal trial when the trial itself, i.e., all in-court

---

**3.** It is clear that the defense's motion was brought after the taking of testimony had begun and during the regular course of trial.

**4.** To the extent *Brooklier* addressed the sealing of documents, it was limited to the transcripts of the three closed in-court proceedings. This court's December 22, 1982 order in no way affects or interferes with the release of transcripts. This court also notes that it is unclear whether a constitutional right of access is to be extended to transcripts in a situation where, unlike *Brooklier,* the public has full access to all in-court proceedings.

**5.** While it is clear, in light of Justice Powell's concurring opinion in *Gannett Co. v. DePasquale,* 443 U.S. 368, 397, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 (1979), that a majority of Justices would hold that the public has a constitutional right of access to pre-trial suppression motions, it is unclear whether such a right will be extended to other pretrial motions. Apparently, the determinative test will be whether a particular motion or procedure is "central to the process." *Id.* at 397 n. 1, 99 S.Ct. at 2914 n. 1.

proceedings, is completely open to public scrutiny and criticism, and when, in almost every instance, all facts and arguments contained in the documents, if relevant and probative of the particular issue at hand, will necessarily stand revealed at the in-court proceeding. Moreover, as a practical matter, documents frequently contain highly prejudicial statements and materials which ultimately may be held to be inadmissible. Thus, public access to such documents will not only mislead the public, but may well compromise the integrity of the criminal proceeding itself. Thus, unlike public scrutiny of voir dire, public scrutiny of documents filed incidental to in-court, i.e., "trial" proceedings would not be promotive of any societal or judicial interest. Therefore, the rationale underlying the Ninth Circuit's extension of a first amendment right of access to voir dire would seem inapplicable to documents.

■ Finally, the AP argues that without access to the documents filed in connection with a criminal trial, it cannot meaningfully exercise its constitutional right of access to the trial itself, contending that "the press can only participate in a meaningful function and a meaningful way or to view a proceedings in a meaningful way if the press has access to the documents that are relevant to that proceeding." This court feels that the AP grossly underestimates the ability and intelligence of the press. It seems incredulous to advance the argument that the press can neither comprehend nor appreciate what transpires during the course of such proceedings without access to the underlying documents. Documents filed in connection with in-court proceedings do not seem to be critical with respect to the press' comprehension of such proceedings, and, at most, would minimally aid such comprehension. The court concludes that the mere fact that documents may be helpful to the press constitutes insufficient basis for attaching a constitutional right of access to them.

■ This court concludes that there exists a common law right of access to documents filed in connection with a criminal

trial. No first amendment right attaches to such documents. *Cf. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (common law right of inspection and access exists as to judicial records and documents).

## II. *U.S. v. Brooklier*

In *Brooklier,* the Ninth Circuit set forth certain procedural and substantive guidelines to be met by the trial court when contemplating the restriction of the public's first amendment right of access to criminal trials. Because this court has concluded that the public's right of access to documents does not entail a constitutional right, the guidelines set forth in *Brooklier* are technically inapplicable to the instant matter. Nevertheless, this court shall address itself to the *Brooklier* standards for two reasons. First, this court recognizes and agrees with the basic philosophy and policies expressed in and underlying the Court's attempt in *Brooklier* to balance competing constitutional interests. Secondly, this court believes that even if a constitutional right of access is found to exist with respect to documents, both the procedural and substantive guidelines of *Brooklier* have been satisfied with respect to this court's December 22, 1982 order. *See discussion, infra.*

■ In *Brooklier,* the Court held that "[t]here are two procedural prerequisites to entry of an order closing a criminal proceeding to the public: (1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings." *Brooklier, supra* 685 F.2d at 1167–1168. Further, the above required findings must "be sufficiently specific to show that the three substantive prerequisites to closure have been satisfied—that there is a substantial probability (1) that public proceedings would result in irreparable damage to defendant's right to a fair trial, (2) that no alternative to closure would adequately protect this right, and (3) that closure would effectively protect it." *id.* at 1168–1169.

The application of the above standards to the instant order requires a bi-level analysis.

### A. *The December 22, 1982 Order*

The AP contends that the instant order should be vacated because of non-compliance with the procedural and substantive guidelines set forth in *Brooklier.*

■ The AP contends that the procedural prerequisites of *Brooklier* were not complied with since the order was entered without affording AP notice and a reasonable opportunity to object, and because this court failed to make findings as to the substantive basis underlying its order. This court notes that on January 25, 1983 a hearing was held as to the propriety of the instant order. In light of this fact, the issue to be examined is whether a timely post-closure hearing satisfies the due process requirement of *Brooklier.* Although *Brooklier* contains some language which might be construed as suggesting that a pre-closure hearing is always required, it is clear that the Court did not adopt an inflexible rule. *Id.* at 1168. Where, as in *Brooklier,* the closure of actual in-court proceedings is contemplated, a pre-closure hearing may be required since for all practical purposes, a post-closure hearing will not undo the "irreparable harm," i.e., denial of access to the actual proceeding, which would result. However, in the context of a sealing of documents, the utilization of a post-closure hearing would not seem to result in any type of irreparable harm whatsoever to the public's right of access. If at a timely post-closure hearing a court determined the vacation of a prior sealing order was proper, the press would at that time have exactly the same degree of access to documents it would have had absent the original issuance of the order. The use of a timely post-closure hearing with respect to documents in no way detracts from or prejudices the public's right of access. Therefore, this court concludes that the January 25, 1983 hearing satisfied the due process requirement of *Brooklier.* Similarly, this court concludes that the findings set forth below satisfy the "articulation" requirement of *Brooklier.*

■ The AP maintains that there is no substantive basis for restricting the public's access to documents pending *in camera* review. On Tuesday, December 21, 1982 and Wednesday, December 22, 1982 news articles appeared in the Los Angeles Times which discussed a purported connection between defendant DeLorean and the Irish Republican Army. On November 30, 1982 the Los Angeles Times published an article which not only purported to identify an alleged government informant and witness, but which also examined the individual's credibility and background. It is obvious that these articles, which were based upon unproven allegations contained in documents filed with this court prior to its sealing order, both prejudice defendant DeLorean and compromise the integrity of the entire proceeding by "trying the action in the newspapers" on the basis of what may ultimately be false or groundless allegations. Following the publications of the above articles, this court was overwhelmed with a deluge of letters and phone calls expressing personal opinions and beliefs concerning the guilt or innocence of defendant DeLorean. Additionally, subsequent to this court's sealing order, documents have been submitted to this court which contain materials that, at least in the opinion of this court, clearly justify the issuance and continued vitality of the sealing order in order to protect the defendants' sixth amendment rights, the integrity of the judicial proceeding and the privacy interests of third parties who are not charged in the indictment. Unfortunately, as a practical matter, this court is unable to reveal the nature of the aforementioned sealed materials. *See discussion, infra.*

Further, the December 22, 1982 order represents a minimal intrusion upon the public's right of access since the order, in and of itself, merely requires that documents be initially filed under seal in order to allow this court to preliminarily inspect the documents and determine whether unjustifiable and highly prejudicial materials

are contained therein. The order does not mandate the permanent sealing of any document. Thus, balancing the intrusion upon the public's right of access against the likelihood of irreparable injury to defendants' sixth amendment rights, the scale tips decidedly toward the continued vitality of this court's December 22, 1982 order.

Finally, this court rejects as unrealistic and impractical those curative measures proposed by the AP. In light of the amount and nature of pre-trial publicity afforded to the instant matter, this court does not believe that measures such as indefinite continuances and voir dire will adequately safeguard the sixth amendment rights of defendants or preserve the integrity of this proceeding should additional irrelevant and prejudicial materials be publicly disclosed.

This court concludes that its December 22, 1982 order, which represents a minimal intrusion upon the public's right to access, is necessary not only to protect the defendants' sixth amendment rights, but to preserve the integrity of the proceedings.

### B. Sealing of Documents

After its *in camera* inspection of submitted documents, this court may determine that a particular document should remain sealed. The application of *Brooklier* to such sealings raises significant problems.

Under *Brooklier,* this court apparently must provide all interested parties a reasonable opportunity to voice their objections to the sealing of a document. As discussed above, this court believes that a timely post-sealing hearing is sufficient. Moreover, because it would be duplicative and wasteful of both the AP's and the court's resources to schedule an actual in-court hearing on each occasion the sealing of a document is contemplated, this court will in its sealing procedure provide for the submission of written objections by the AP.

The more important issue at hand is whether pre-objection access to the documents must be provided. The court recognizes the fact that absent pre-objection access to the subject documents, the AP's ability to substantively address the propriety of the sealing order will be impaired. Nevertheless, the court concludes that pre-objection access to the subject documents is not required. In *Brooklier,* the Court merely held that the trial judge was required to afford all interested parties a reasonable opportunity to object; the Court did not hold that the trial judge was required to disclose what was expected to transpire at trial because it would aid in the formulation of objections. Additionally, this court has presented to the AP a scheme which would have allowed them pre-objection access to the subject documents and the materials therein contained, subject to certain non-disclosure requirements.[6] The proposal was rejected. Absent disclosure restrictions, this court believes that pre-objection access to the subject documents will result in the widespread public disclosure of the very materials to be sealed, thereby eviscerating any subsequent sealing order which this court might issue.

■ Finally, this court is extremely troubled by the "articulation" requirement of *Brooklier.* In *Brooklier,* the Court held that in the event of closure, the trial court must set forth "findings [which must be] sufficiently specific to show that the three substantive prerequisites to closure have been satisfied..." *Brooklier, supra* at 1168–1169. While it is unclear at exactly what degree of specificity findings become "sufficiently specific" for purposes of the articulation requirement, it is clear that "[g]eneral statements that the court concludes closure is necessary from a balancing of first and sixth amendment interests in light of the presence of 'problems of publicity' does not afford a basis for determining whether the court applied the correct standard in weighing possible prejudice from open proceedings or whether the court's

---

**6.** The scheme proposed by this court would have allowed counsel access to the subject documents for the purpose of filing objections on counsel's guarantee that the materials contained therein would not be disclosed.

**804**

conclusion was supported by the record."
*Id.* at 1169.

█ The Court's holding in *Brooklier* may be construed as, in all instances, rejecting as insufficient a trial court's conclusory statement that it has found defendant's sixth amendment right to outweigh the public's first amendment right. However, under such an interpretation, neither this nor any trial court could, for all practical purposes, ever effectively seal a document since in order to substantively justify the sealing of said document, the court would have to, in its findings, set forth those very materials it determined to be extremely prejudicial to defendant and properly sealed. For this reason, the court retreats from an across-the-board application of the articulation requirement of *Brooklier* insofar as it rejected the trial court's findings to be insufficient, and would, as to that aspect of the articulation requirement, limit its application to the facts of *Brooklier.* This court concludes that whether findings are "sufficiently specific" for purposes of the "articulation" requirement is to be determined on a case-to-case basis.[7]

█ In the instant matter, in order to protect the integrity of its sealing orders, this court will, in every instance it decides to seal a document, issue findings which merely state that the court has examined the subject documents and determined that public disclosure would result in irreparable damage to defendants' rights to a fair trial; that no alternative to sealing would adequately protect defendants' sixth amendment rights; and, that sealing, in fact, preserves defendants' rights. For purposes of appeal, these orders will incorporate the sealed documents as part of the record, so that an appellate court may review them *in camera* to determine whether there existed a substantive basis for their sealing. This court believes that the above arrangement is the only method whereby both the AP's right of appeal and defendants' sixth

amendment rights may be simultaneously preserved. This memorandum shall be filed unsealed.

---

**7.** The above discussion is premised upon this court's belief that the findings to be articulated are to be *public* findings since to place such findings under seal would merely result in an ex parte communication between the trial court and appellate court and would result in the *ad infinitum* issuance of sealed findings to justify the sealing of prior findings.