Craig DeLOSS and Barry DeLoss, Appellants,

v.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Jerry L. Bauer, Appellees.

No. 86–2064.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided July 2, 1987.

---

Mark E. Schantz, Des Moines, Iowa, for appellants.

John E. Beamer, Asst. U.S. Atty., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The issue before us is whether the owners of rental property in Spencer, Iowa suitable for housing low-income elderly persons have standing as either competitors or residents to challenge the Department of Housing and Urban Development's decision to finance construction of a 36–unit housing project for the low-income elderly and provide rent subsidies for the project. This assistance is authorized under section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q (1982 & Supp. III 1985), and section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f (1982 & Supp. III 1985), respectively. The district court dismissed the claim of the owners, Craig and Barry DeLoss, and they argue that the district court improperly applied the "zone of interests" standing test first announced in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and recently examined in *Clarke v. Securities Industry Association*, —— U.S. ——, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). *Securities Industry*, issued after the district court's consideration of this case, clarifies the "zone of interests" test and requires us to reverse the district court's order and remand for further proceedings.

The DeLosses alleged in their amended complaint that in September 1985 HUD, acting through Jerry L. Bauer, manager of HUD's Des Moines, Iowa office, approved section 202 financing, *see* 12 U.S.C. § 1701q, for a proposed 36–unit rental housing project for the elderly in Spencer, Iowa. Section 202 authorizes HUD to make loans on favorable terms to private and non-profit organizations, called "sponsors," for the construction of housing for elderly and handicapped persons. The project, known as Sunset Retirement Home East, also received section 8 rent subsidy approval. *See* 42 U.S.C. § 1437f. Section 8 authorizes payment of rent subsidies to owners of existing rental housing or to section 202 sponsors to enable low-income

persons to occupy dwelling units they could not otherwise afford.[1]

Pursuant to the Administrative Procedure Act, the DeLosses sought judicial review of HUD's actions in the district court. *See* 5 U.S.C. § 702 (1982). They alleged that twice in the last two years HUD had disapproved substantially similar proposals for rental housing in Spencer. The DeLosses contended that HUD acted unlawfully by, among other things, approving assistance that was not needed, *see* 42 U.S.C. § 1439(c) (1982); approving assistance despite inadequate public facilities and services to serve the proposed project, *see id.*; and failing to utilize existing suitable housing, in contravention of national housing goals, *see* 12 U.S.C. § 1701t (1982). The DeLosses also contended that HUD acted arbitrarily and capriciously by failing to consider the data and conditions 24 C.F.R. § 791.302 (1986) requires HUD to consider in determining the need for section 202 assistance.

The DeLosses' amended complaint alleged that they owned residential rental property in Spencer suitable and available for occupation by low-income elderly persons. They contended that HUD's unlawful approval of section 202 financing for the Sunset project would add to the existing surplus of suitable rental housing in the community, thereby forcing them and other rental property owners to discontinue business and leave the property vacant. Additionally, they argued that HUD's approval of section 8 assistance would greatly reduce the availability of such assistance for tenants in their buildings. Thus, HUD's actions would cause them economic injury in their capacities as owners of rental property. They also contended that the economic and aesthetic deterioration of the community caused by the construction and operation of the Spencer project would injure them in their capacities as landowning residents of Spencer.

HUD filed a motion to dismiss the DeLosses' amended complaint for lack of standing. The district court, relying on *Association of Data Processing Service Organizations, Inc. v. Camp., supra,* ruled that the DeLosses, in their capacities as competitors in the Spencer rental housing market and as landowning residents of Spencer, failed to satisfy the prudential "zone of interests" standing test. *DeLoss v. HUD,* No. 86–314–B, slip op. at 3–4 (S.D. Iowa July 28, 1986). The district court first observed that "handicapped and elderly people in need of housing are the primary intended beneficiaries of section 202 housing grants." *Id.* at 2. The court then concluded that there is nothing in the statutes or legislative history relating to section 202/8 programs that evinces Congress' intent to regulate or protect competitors' or residents' interests. Because "Congress would have spoken more clearly * * * if it was concerned with the competitive effect of 202/8 housing projects on private landlords," *id.* at 3–4, and because "Congress could have spoken more clearly if it was concerned with the effects [of section 202/8 projects on residents]," *id.* at 4, the district court held that the DeLosses' interests failed to satisfy the "zone of interests" standing test.

## I.

The Administrative Procedure Act grants standing to a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. In *Data Processing, supra,* the Supreme Court announced that in addition to those standing requirements mandated by Article III of the Constitution,[2] this lan-

---

1. The Secretary notes the following in 24 C.F.R. § 885.1(b) (1986):

   Consistent with Congressional directives stated in the Housing and Community Development Act of 1977, these regulations have been developed to consolidate the application requirements of both Section 202 and section 8. Accordingly, projects that meet the requirements of the Section 202 program shall be considered as having met the requirements for housing assistance payments under the Section 8 Housing Assistance Payments Program as provided in the U.S. Housing Act of 1937.

   Therefore, we often refer to the programs collectively as section 202/8 programs.

2. While the distinction between constitutional and prudential standing requirements has not always been clear, the following is certain:

guage adds the requirement that "the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830.

The Supreme Court recently examined the "zone of interests" test in *Clarke v. Securities Industry Association, supra,* where it quelled the rumors that the test is dead, *see* 4 K. Davis, *Administrative Law Treatise* § 24:17 (2d ed. 1983), while, at the same time, apparently placing the test in a new position in the framework of jurisdictional analysis.³ The question in *Securities Industry* was whether Securities Industry Association—a trade association representing securities brokers, underwriters, and investment bankers—was a proper party, in light of the National Bank Act's branching provisions, to challenge the Comptroller of the Currency's decision that two national banks could open offices that would offer discount brokerage services to the public. 107 S.Ct. at 753–54. In the course of holding that the Association was a proper party, the Court reformulated *Data Processing's* zone test, stating:

> In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

*Id.* at 757.

The Court emphasized that "[t]he [zone] test is not meant to be especially demand-ing; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Id.* (footnotes omitted). The test is satisfied if a plaintiff's asserted interest has a "plausible relationship," *id.* at 759, to a general policy implicit in a relevant statute. *See id.* at 757 n. 14; *Investment Co. Inst. v. Camp,* 401 U.S. 617, 620, 91 S.Ct. 1091, 1093, 28 L.Ed.2d 367 (1971). Moreover, in looking to "a relevant statute," as that phrase is used in 5 U.S.C. § 702, a court is "not limited to considering the statute under which [the plaintiff] sued, but may consider any provision that helps [it] to understand Congress' overall purposes in the [statute under which the plaintiff sued]." *Securities Indus.,* 107 S.Ct. at 758; *see also id.* at 756 (discussing *Data Processing*). Therefore, as footnote 15 of *Securities Industry* stresses, a court scrutinizes too closely if, instead of looking for the general policy implicit in relevant statutes, it attempts to "discern whether the interest asserted by a party in the particular instance is one intended by Congress to be protected or regulated by the statute under which suit is brought." *Control Data Corp. v. Baldrige,* 655 F.2d 283, 293–94 (D.C.Cir.) (footnote omitted), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981).

## II.

■ *Securities Industry* convinces us that the district court's "zone of interests" inquiry was too confining. After noting that the elderly and handicapped are the

---

[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976).
*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

3. At least as the zone test applies to actions under the Administrative Procedure Act, the Court in *Securities Industry* treats the test as an element of reviewability, not standing. 107 S.Ct. at 757–58; *cf. Barlow v. Collins,* 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970) (Brennan, J., dissenting) (urging such a result). It never refers to its formulation of the test as one of standing; instead, it speaks of the test as being based on a presumption of reviewability, and emphasizes that "[t]he inquiry into reviewability does not end with the zone of interest test." 107 S.Ct. at 757; *see also infra* note 5.

primary beneficiaries of section 202 housing grants, the district court ruled that the DeLosses lacked standing because Congress could or would have spoken more clearly had it intended to protect their interests. Slip op. at 2–4. Such a restrictive analysis is condemned by *Securities Industry*. A court cannot circumscribe the zone around only those interests Congress *said* it intended to protect or regulate, while excluding all others. 107 S.Ct. at 757.

■ There is a plausible relationship between the interests the DeLosses assert as competitors in the Spencer rental housing market and the interests protected or regulated by section 202/8 programs. On several occasions, the Supreme Court has recognized that a competitor of a party subject to regulatory action is a proper party to challenge the propriety of the agency action. *See, e.g., id.* at 750; *Investment Co. Inst.*, 401 U.S. at 617, 91 S.Ct. at 1091; *Data Processing*, 397 U.S. at 150, 90 S.Ct. at 827. We think that the relationship between the DeLosses' asserted competitor interests and the interests regulated or protected by the relevant statutes is no less significant than those the Supreme Court has held sufficient to satisfy the zone test. In carrying out a section 202/8 program, "there should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques." 12 U.S.C. § 1701t (1982). Accordingly, section 202/8 assistance cannot be granted in an area having a local housing assistance plan unless the plan surveys the condition of the housing stock in the community and has as an objective its reclamation. 42 U.S.C. § 5304(c)(1)(A) & (C) (1982 & Supp. III 1985). Similarly, in areas not subject to a housing assistance plan, section 202/8 assistance may not be given unless there is a "need" for it. *Id.* § 1439(c). We think this language raises a concern for the interests of competitors who may be adversely affected by an award of section 202/8 assistance. Because the DeLosses are "competitors who allege an injury that implicates the policies of the [relevant statutues]," they "are very reasonable candidates to seek review of [HUD's] rulings." *See Securities Indus.*, 107 S.Ct. at 759.

■ We also think there is a plausible relationship between the interests the DeLosses assert as residents of Spencer and the interests protected or regulated by section 202/8 programs. In reviewing an application for a section 202 loan, Congress has authorized the Secretary to "consider the extent to which such loans will assist in stabilizing, conserving, and revitalizing neighborhoods and communities." 12 U.S.C. § 1701q(a)(6)(A). The Secretary may then make a loan to, among other entities, a corporation whose governing board "is selected in a manner to assure that there is significant representation of the views of the community in which such project is located." *Id.* § 1701q(d)(2)(B) & (a)(2). We agree that "these sections evince sufficient concern for the interests of residents of the areas where section 202 projects are to be constructed to bring [affected residents] within the zone of interest of the Act." *Kirby v. United States*, 675 F.2d 60, 66 (3d Cir.1982).[4] The congressional history to these sections indicates that not only does section 202 concern itself with residents' interests, but it contemplates significant resident input regarding the propriety and implementation of a section 202 project. One Representative discussing the language that was to become 12 U.S.C. § 1701q(d)(2) stated:

Of special interest to me is a provision contained in this legislation which will strengthen the authority of the corporations which are established to oversee the development of section 202 housing projects. This provision simply requires

---

4. In *Kirby*, an ostensible class of local residents, *see* 675 F.2d at 62 n. 2, filed suit arguing, among other things, that the corporation which was granted HUD assistance did not have a governing board that assured significant representation of resident interests. *Id.* at 63. While no such claim is raised here, it is still appropriate to consider the purpose underlying the corporation definition of 12 U.S.C. § 1701q(d)(2)(B) and its requirement of resident representation since that statutory language is a "provision that helps us to understand Congress' overall purposes in the [statutes under which the DeLosses sued]." *Securities Indus.*, 107 S Ct. at 758.

that the governing boards of these corporations are selected in a manner which assures that there is significant representation of the views of the particular community in which the project is located.

Fundamental to the success of any federally mandated housing program is the degree to which community involvement and community decisionmaking is enhanced. Based on my own experience with a section 202–funded project in my own congressional district, I cannot emphasize strongly enough the importance of relying on the judgments of a community responsive board in achieving a successful section 202 housing project. While national sponsors of senior citizen housing should exercise responsible participation in the decisions of their locally based counterparts, it is the commitment and energies of local people in their home communities that will insure the success of these projects and foster important on-going linkages with the surrounding neighborhoods.

124 Cong.Rec. 18813 (1978) (statement of Representative Lundine); *see also* H.R. Conf.Rep. No. 1792, 95th Cong., 2d Sess. 71, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4872, 4891 (the subsection is intended to "assure significant representation of the views of the community," and "increase the involvement of local residents in the development and operation of section 202 housing projects"); H.R.Rep. No. 1161, 95th Cong., 2d Sess. 21 (the "corporation" definition "assures that there is significant representation of the views of the particular community in which the project is located").

While the nexus between the DeLosses' asserted interests as residents of Spencer and those interests regulated by section 202 is sufficient to satisfy the zone test, *Kirby v. United States,* 675 F.2d at 66–67; *see Securities Indus.,* 107 S.Ct. at 757, we are also persuaded by the relationship between the DeLosses' asserted interests and those regulated by the Housing and Community Development Act of 1974, Pub.L.

No. 93–383, 88 Stat. 633 (1974), which, among other things, coordinates housing programs, such as section 202 and section 8 projects. "While the principal beneficiaries of the Act are persons of low and moderate income, it is clear that the statute's purpose is to improve the quality of urban environments for all residents." *Lower Moreland Homeowner's Ass'n v. HUD,* 479 F.Supp. 886, 896 (E.D.Penn.1979). For example, under 42 U.S.C. § 1439(a) (1982 & Supp. III 1985), section 202/8 assistance cannot be granted unless such assistance is consistent with a HUD-approved local housing assistance plan, which is to be developed with substantial input from "affected citizens." 42 U.S.C. § 5304(a)(2) (1982 & Supp. III 1985); *see also id.* § 5304(b)(3) (funded activities must meet community development needs); *id.* § 5304(c) (plan must have objective of furthering the revitalization of the community); *id.* § 5304(d) (citizens allowed to comment on use of funds report). And for areas not having a local housing assistance plan, like Spencer, section 202/8 assistance may not be provided unless there is a "need" for such assistance. 42 U.S.C. § 1439(c). Reading section 1439(c), a section under which the DeLosses sued, with section 1439(a), a "provision that helps us to understand Congress' overall purposes in [the Act]," *Securities Indus.,* 107 S.Ct. at 758, we can only conclude that "the interests advanced by [the DeLosses] are within the zone of interests which the Housing and Community Development Act of 1974 seeks to protect." *Lower Moreland,* 479 F.Supp. at 896.

There is a significant relationship between the DeLosses' asserted interests and the interests regulated by the statutes under which they sue. *Securities Indus., supra.* While HUD has not raised a 5 U.S.C. § 701 preclusion challenge in this appeal, we have found nothing in the statutory scheme that makes fairly discernible a congressional intent to preclude the DeLosses from obtaining judicial review. *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).[5] Therefore, we hold that the De-

---

**5.** The reformulated zone test and the section 701 reviewability test, as conducted in *Community*

Losses are proper parties to challenge HUD's decision to provide section 202/8 assistance to the Sunset project. In so holding, we express no view as to whether the DeLosses have stated a claim or as to the merits of such claim. Our decision as to standing should not be read as suggesting that the DeLosses are protected against competition in the marketplace or that economic injury is all that is needed to state a claim.

The order of the district court is reversed, and this action is remanded for further proceedings.

*Nutrition,* involve similar considerations. Under both tests, the presumption favoring a right to review is overcome only if congressional intent or purpose supports such a result. *Securities Indus.,* 107 S.Ct. at 757. Under both tests, a court reviews the same evidence—the relevant statutes, their purposes, their legislative histories, the nature of the administrative action involved, and prior judicial constructions of the statutes. *Id.; Community Nutrition,* 467 U.S. at 345, 104 S.Ct. at 2453; *cf. Securities Indus.,* 107 S.Ct. at 758-59 (exploring a statute, its policy, its legislative history, and prior judicial interpretation); *Data Processing,* 397 U.S. at 155-56, 90 S.Ct. at 830 (same). A plaintiff may not obtain review under the section 701 reviewability test, however, if "congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Securities Indus.,* 107 S.Ct. at 757 (quoting *Community Nutrition,* 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Data Processing,* 397 U.S. at 157, 90 S.Ct. at 831)).