**OVERTON POWER DISTRICT NO. 5,**
**Valley Electric Association, Inc.,**
**Plaintiffs–Appellants,**

v.

**Hazel R. O'LEARY, William H. White, Christine Ervin, Federal Energy Regulatory Commission, Defendants–Appellees,**

**Arizona Power Authority, Defendant–Intervenor–Appellee.**

No. 93–17233.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 13, 1995.

Submission Deferred Feb. 15, 1995.

Resubmitted Dec. 11, 1995.

Decided Jan. 4, 1996.

James T. McManus and Arnold B. Podgorsky, Wright & Talisman, Washington, DC, for plaintiffs-appellants.

Frank W. Hunger, Assistant Attorney General, and Dennis D. Linder, Robert B. Greenspan and C. Max Vassanelli, Department of Justice, Washington, DC, for defendants-appellees.

Donald R. Allen, Duncan & Allen, Washington, DC, for amicus curiae Colorado River Energy Distributors Association.

Bryant C. Danner and Christa Piantadosi, Rosemead, California, for amicus curiae Southern California Edison Company.

Northcutt Ely, Redlands, California, for amici curiae Los Angeles Department of Water and Power and Southern California Edison Company.

James P. Bartlett, Phoenix, Arizona, and Michael McCarty, Brickfield, Burchette & Ritts, Washington, DC, for defendant-intervenor-appellee.

Before: REINHARDT, THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Overton Power District No. 5 and Valley Electric Association (collectively "Overton/Valley"), two Nevada power suppliers, challenge the rate charged for power generated at Hoover Dam. The district court granted summary judgment rejecting most of Overton/Valley's claims. *Overton Power Dist No. 5 v. Watkins,* 829 F.Supp. 1523 (D.Nev.1993). Because we conclude Overton/Valley lack standing, we remand with an order for the district court to vacate its opinion and dismiss Overton/Valley's action.

## FACTS

The Western Area Power Administration (Western) sets power rates for the Boulder Canyon Project—popularly known as Hoover Dam—under 43 U.S.C. § 617, et seq. (the BCP statute). Western sells power generated at Hoover Dam to contractors designated by the BCP statute; in Nevada the Colorado River Commission (CRC) is the only designated contractor. *See* 43 U.S.C. § 619a. Overton/Valley purchase energy from the CRC at the same price the CRC paid for it, and they resell it to their customers.

On October 25, 1990, Western proposed a rate increase for Hoover Dam power and initiated the public comment process. On June 10, the Department of Energy (DOE) approved the new rate on an interim basis. This new rate, known as WAPA–49, became effective on July 1, 1991 on an interim basis pending approval by the Federal Energy Regulatory Commission (FERC).

The Contractors and their customers were unhappy with the methodology used to calculate WAPA–49. On June 26, 1991, Western and the Contractors requested that the FERC defer review so they could negotiate a new rate. The Contractors agreed to continue to pay the WAPA–49 rate until a new rate was negotiated, and not to challenge the WAPA–49 rate in the meantime. Overton/Valley, not parties to the agreement and believing that negotiations were fruitless, filed a formal complaint with the FERC.

The Contractors and Western reached an agreement on September 15, 1992; the rate calculated according to the agreed upon methods is called WAPA–58. Overton/Valley filed this suit in Nevada district court on October 15, 1992 seeking review of the WAPA–49 rate under the Administrative Procedures Act, 5 U.S.C. § 701, et seq. (APA). On November 10, 1992, the FERC issued an order simultaneously granting Overton/Valley's motion to intervene in the rate-approval process and issuing final approval of the WAPA–49 rate. Overton/Valley amended their complaint to reflect the FERC's action and sought a preliminary injunction seeking to block implementation of the WAPA–58 rate so their challenge to the WAPA–49 rate would not be moot. The district court denied the injunction; Western placed the WAPA–58 rate into effect on January 1, 1993.

The district court decided the merits on cross-motions for summary judgment. The district court granted summary judgment to

Western on all issues, except Overton/Valley's claim that Western's auditing procedures violated DOE regulations, which claim the district court remanded to the FERC. Overton/Valley timely appealed to this court.

## DISCUSSION

Following oral argument in this case, we asked for supplemental briefs from the parties on the questions of mootness and standing. We assume, without deciding, that Overton/Valley's case is not moot.

■ There are a number of components to the question whether a plaintiff has standing to seek judicial review of agency action under the APA. Our opinion in *National Wildlife Federation v. Burford,* 871 F.2d 849, 851–52 (9th Cir.1989), describes these components. Here, we are concerned with whether Congress intended to allow only a specific class of plaintiffs to challenge the agency's action. As we summarized this particular requirement in *National Wildlife Federation:*

> [T]he statute at issue will preclude standing if it expresses a fairly discernible congressional intent to forestall a suit at the plaintiff's behest. Although the plaintiff may fall within a statute's zone of interest, judicial review will not occur if the statute suggests that Congress intended to allow only a specific class of plaintiff to challenge an agency's action.

*Id.* at 852 (internal quotation marks and citations omitted).

This requirement for parties seeking judicial review under the APA originated in the Supreme Court's decision in *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). In *Block,* the Court held that consumers of dairy products had no standing to obtain judicial review of milk market orders issued by the Secretary of Agriculture under the Agricultural Marketing Agreement Act (AMAA).

The Court noted that "[t]he APA confers a general cause of action upon persons adversely affected or aggrieved by agency action ... but withdraws that cause of action to the extent the relevant statute precludes judicial review." *Id.* at 345, 104 S.Ct. at 2453 (internal quotations and citations omitted). The Court then held that a relevant statute will be found to preclude standing for particular plaintiffs whenever a congressional intent to preclude is "fairly discernible in the statutory scheme." *Id.* at 351, 104 S.Ct. at 2456 (quotations omitted).

The *Block* Court found a fairly discernible congressional intent to preclude consumers from challenging milk market orders in the AMAA and emphasized that the preclusion would "not threaten realization of the fundamental objectives of the statute." *Id.* at 352, 104 S.Ct. at 2457. Not only would the interests of consumers be adequately protected by others enjoying standing under the law, but "consumer suits might themselves frustrate achievement of the statutory purposes" by disrupting the "cooperative venture among the Secretary, producers, and handlers" contemplated by Congress and "undermin[ing] the congressional preference for administrative remedies." *Id.*

The Court has subsequently explained that the *Block* rule for standing supplements the traditional zone of interest test.

> The inquiry into reviewability does not end with the 'zone of interest' test. In *Community Nutrition Institute,* the interests of the consumers were arguably in the zone of the interests meant to be protected by the Act, *see* 467 U.S., at 347, 104 S.Ct. at 2454, but the Court found that point not dispositive because *at bottom the reviewability question turns on congressional intent* ....

*Clarke v. Securities Industry Assn.,* 479 U.S. 388, 400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987) (emphasis added).

■ In the present case, we hold the BCP statute expresses a "fairly discernible" congressional intent to preclude standing from plaintiffs such as Overton/Valley.

The BCP statute contains no particular provision granting or limiting who may sue under it, nor is there any helpful legislative history on this point.[1] The statutory scheme

---

1. The legislative history for the 1984 reauthorization of the BCP is reprinted at 1984 U.S.C.C.A.N. at 2479.

as a whole, however, suggests that Congress intended only the Contractors named in the statute to have standing to challenge ratesetting decisions. Overton/Valley are not among those named in the BCP statute. Moreover, the fundamental objectives of the BCP statute are best achieved by denying Overton/Valley standing.

When Congress reauthorized the BCP in 1984 it required:

That in the case of Arizona and Nevada, such contracts shall be offered to the Arizona Power Authority and the Colorado River Commission of Nevada, respectively, as the agency specified by State law as the agent of such State for purchasing power from the Boulder Canyon Project[ ].

43 U.S.C. § 619a(a)(1)(B). Congress then required that contracts entered into between the Contractors and Western

shall contain provisions by which any dispute or disagreement as to interpretation or performance of the provisions of this subchapter or *of applicable regulations* or of the contract may be determined by arbitration or court proceedings.

43 U.S.C. § 619a(h)(2) (emphasis added).

The above language indicates Congress intended only the Contractors to be able to challenge ratesetting regulations. By requiring the Contractors and Western to establish by contract the procedures for review over "any dispute," and then listing by name the authorized Contractors, Congress fairly discernibly specified who would have standing to challenge ratesetting while enabling the parties themselves to determine the appropriate forum.

The BCP statute allows the Contractors and Western to agree to settle any dispute by arbitration, and thus empowers them to keep the federal courts out of the dispute resolution process regarding rates and contract interpretation. The BCP statute also expresses a preference for excluding courts from deciding issues such as those raised in this case by providing that the Secretary of Energy "shall not execute a contract" with any entity that is party to a designated lawsuit over power allocation unless that entity

releases the United States and dismisses all its claims with prejudice. 43 U.S.C. § 619a(c)(1). Congress also provided a short, one-year statute of limitations on "any claim," 43 U.S.C. § 619a(h)(1), and stated that the BCP statute was to "ensure that the rights of contractors ... will vest with certainty and finality." 43 U.S.C. § 619a(i). This statutory scheme for obtaining finality and avoiding, limiting, and ending litigation would fail if we allowed the issues to come into court through a side door.

The course of this particular challenge to the WAPA–49 rate convinces us that the statutory scheme means to exclude court challenges by all parties other than the Contractors. In this case, Overton/Valley challenge a settlement negotiated by all the statutorily authorized Contractors. If Overton/Valley have standing then so do ultimate power consumers, for no reasonable line can be drawn between Overton/Valley's interest in cheap power and consumers' interest in the same, nor could one say that Congress intended Overton/Valley to challenge these rates but Congress did not intend ultimate consumers to challenge the rates. Such an interpretation would mean that even if Overton/Valley settled the present lawsuit, that settlement could be attacked by a consumer who wanted even cheaper power, just as Overton/Valley challenge CRC's settlement.

We are not persuaded Congress intended to create such a matrushka doll system of judicial review. Such a system would undermine Congress' intention that the Contractors form contracts with Western which contain binding provisions for challenging regulatory decisions. *See Block,* 467 U.S. at 352, 104 S.Ct. at 2457 (allowing plaintiffs to sue would "disrupt[ ] administration of the congressional scheme.").

If Overton/Valley were found to have standing, there would be the risk alluded to in *Block* that parties would evade the statutorily envisioned review mechanisms in favor of those established by the APA. *Id.* at 347, 104 S.Ct. at 2454. In *Block,* the Court said that allowing customers to sue could result in dairy handlers changing their hats to con-

sumers in order to take advantage of the APA review procedures if dissatisfied with the review mechanisms of the AMAA. *Id.*

Similarly, Contractors could evade the review procedures the BCP statute requires them to include in their contracts by changing their hats and obtaining review under the APA. Most executives, officials, or employees of the Contractors are also individual power consumers and, if dissatisfied with their contractual review procedures, could change their hats, call themselves consumers, and sue under the APA. This cannot be what Congress intended in light of its direct mandate that the Contractors and Western agree to set review procedures under terms of negotiated contracts.

Our holding does not undermine the rights of Nevadans to subject power rates to review. The Commissioners of Nevada's CRC are appointed through a political process. *See* N.R.S. § 538.051. If Overton/Valley, or their customers, do not approve of the CRC's rate settlement they may seek redress through the political process. Due to the political accountability of CRC, it is fair to conclude that there is sufficient identity of interests to ensure that CRC safeguards the interests of Overton/Valley and other consumers of power. *See Block,* 467 U.S. at 352, 104 S.Ct. at 2457 (identity of interests ensures those with standing will safeguard the interests of those without). The facts of this case fully support this conclusion. Within a few weeks of the DOE's approval of the WAPA–49 rate, the CRC entered into negotiations to lower the rate and ultimately succeeded in the renegotiation to the benefit of power consumers.

Overton/Valley point to the BCP's statute of limitations to support their contention that the statute is silent on whether non-Contractors may seek judicial review. *See* 43 U.S.C. § 619a(h)(1). We agree this section of the BCP statute would have been a logical place for Congress to indicate who may seek judicial review, and we further agree that this section is silent on the question. But this silence does not sufficiently detract from the rest of the statutory scheme which suggests that only the Contractors have standing to

seek judicial review of the rates set by Western.

Overton/Valley further argue that because they were entitled to participate in the administrative proceedings they have standing to seek judicial review. Yet the BCP statute does not provide for public participation in its ratesetting procedure. 43 U.S.C. § 618 (authorizing the Secretary of the Interior[2] to set power rates). Overton/Valley were only able to participate in those proceedings through general DOE regulations, 10 C.F.R. § 903, which shed no light on congressional intent regarding the BCP statute.

Moreover, it does not necessarily follow that a party able to participate in administrative proceedings therefore has standing to challenge agency decisions. In *Block,* the Court pointed out that the consumers were allowed to participate in a public hearing yet the Court denied them standing. *Block,* 467 U.S. at 342, 104 S.Ct. at 2452.

Overton/Valley contend their standing to challenge the WAPA–49 rate in this case is supported by our holding in *California Energy Comm'n v. Bonneville Power Administration,* 909 F.2d 1298 (9th Cir.1990), *cert. denied,* 500 U.S. 904, 111 S.Ct. 1682, 114 L.Ed.2d 77 (1991). There, we held that power consumers had standing to challenge a Bonneville Power Authority (BPA) policy which effectively raised those consumers' rates. *Id.* at 1306–07.

*California Energy Comm'n* does not control the present case for two reasons. First, in *California Energy Comm'n* we did not consider the *Block* rule of standing. Second, Congress has not determined who may contract for BPA power as specifically as it has directed who may contract for Boulder Canyon power. *Compare* 16 U.S.C. § 837a (general preference for BPA power to be sold in Pacific Northwest) *and* 16 U.S.C. § 839c (prioritizing classes of purchases of BPA power) *with* 43 U.S.C. § 619a (naming specific contractors for BCP power).

Finally, Overton/Valley argue we must respect the presumption of reviewability under the APA. The holding of *Block,* however, is

**2.** Congress has transferred this authority to the    Secretary of Energy. 42 U.S.C. § 7152.

that this very presumption may be overcome "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.' " *Block,* 467 U.S. at 351, 104 S.Ct. at 2456 (quoting *Data Processing Service v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 832, 25 L.Ed.2d 184 (1970)). Because such a congressional intent is fairly discernible in the BCP statutory scheme, we hold the presumption is overcome.

In sum, Overton/Valley's arguments fail to undermine the clear implication of the BCP statutory scheme: Congress intended that only the Contractors may seek judicial review of BCP rates. Because Overton/Valley lack standing to bring this action, we remand this cause to the district court with directions that it vacate its opinion and dismiss the case.

VACATED and REMANDED with directions to DISMISS.